171 So. 836

TONRY v. BOARD OF LEVEE COM'RS FOR ORLEANS LEVEE DIST.

No. 34214.

Jan. 13, 1937.

Rehearing Denied Jan. 15, 1937.

B. M. Goodman, of New Orleans, for appellant.

James Wilkinson and George Piazza, both of New Orleans, for appellee.

HIGGINS, Justice.

The authority of the Board of Levee Commissioners for the Orleans Levee District to refund its bonded indebtedness for the purpose of saving the taxpayers thousands of dollars by securing a lower rate of interest was questioned by a taxpayer. The action was dismissed, and the plaintiff has appealed.

The learned trial judge has so clearly stated the issues and correctly decided them in his written opinion, we quote it, in full, with our approval:

"This is a suit by a taxpayer of the City of New Orleans to enjoin, restrain, and prohibit the Board of Levee Commissioners of the Orleans Levee District from issuing and selling its refunding bonds in the sum of $3,387,000, the proceeds of which bonds are to be substituted for outstanding reparation bonds in the same amount. The act of substituting the new bonds for the old bonds is one which would not harm a taxpayer, but is one which would lessen the tax obligation by reason of the lesser

rate of interest provided for in the re-funding bonds.

"Plaintiff and defendant admit that a resolution was adopted by the defendant board, authorizing the issuance and sale of these refunding bonds, which contains the following:

" 'First. The holders of any or all of the bonds of this issue are subrogated to the rights of the holders of the bonds refunded hereby, and these bonds shall have the same lien on and be payable from the proceeds of the tax provided by Act No. 2 of the Legislature of the State of Louisiana at the Extra Session for 1927;

" 'Second, be it further resolved that the holders of bonds authorized hereby and issued hereunder for the purpose of refunding said $3,387,000.00 issue of September 1, 1928, 4¾ per cent per annum bonds, shall be subrogated to the rights of the holders of said reparation bonds refunded hereby and bonds issued hereunder shall have the same lien on and be payable from the proceeds of the taxes provided by Act No. 2 of the Legislature of the State of Louisiana at the Extra Session of 1927.'

"It was contended by the plaintiff that the defendant board is without right in law to substitute to the holders of the proposed refunding bonds any lien on and the right to be paid from the proceeds of a special tax provided by Act No. 2 of the Legislature of the State of Louisiana at the Extra Session for 1927; and further contended that the special tax set forth in Act No. 2 shall cease to operate when the reparation bonds issued under said act shall have been redeemed.

"The pertinent part of Act No. 2 of the Extra Session for 1927 reads as follows:

" 'The proceeds of said special tax shall be and are hereby dedicated to the payment of the principal and interest of said bonds, * * * and the Treasurer of the State of Louisiana is hereby authorized to reserve out of the revenues of said Board, derived from the said special tax, an amount sufficient to provide in each year for the principal and interest and sinking fund, if any, on said bonds, * * * and to pay the same as they severally become due and payable. * * * When the bonds, notes or certificates of indebtedness, issued hereunder, *shall have been paid in full, said tax shall cease to be levied.'* Section 9. (Italics ours.)

"Plaintiff contends that as soon as the reparation bonds issued under the authority of this act shall have been redeemed, the special tax provided shall cease to be levied, and that therefore it is unlawful for the defendant board to stipulate that the holders of the proposed refunding bonds shall be subrogated to a lien on the funds produced by this special tax, because under the terms of the act creating said special tax, said tax would cease to be levied at the moment the reparation bonds have been called in and paid.

"This contention the court believes to be without merit, for if the reparation bonds were as a fact fully paid and satisfied from the proceeds of a special tax levied to retire said bonds, that is, if the proceeds of a special tax provided for in

Act No. 2 of the Extra Session of 1927 were sufficient to pay all of the outstanding reparation bonds, then, in that case, the obligation of the defendant board with reference to the reparation bonds would be fully satisfied and there would be no longer any necessity or legal reason for the special tax to continue. However, the facts of this case do not support the contention of the plaintiff. The truth of the matter is, as shown from the evidence, that the entire obligation of $3,387,000 evidenced by the reparation bonds will continue to be an obligation of the defendant board until that obligation is fully paid and discharged, notwithstanding the fact that said reparation bonds will be refunded under the plan set forth by the defendant board. This refunding operation is resorted to for the sole and only purpose of taking advantage of the strong bond market now existing, with a view of having the interest rate on this huge sum reduced from 4¾ per cent. per annum to 3½ and 4 per cent. per annum. This reduction in interest rate will cause a saving of thousands of dollars to the taxpayers of the city of New Orleans.

"Besides, the court believes that the Board of Levee Commissioners do not administer the affairs of the Levee Board in the same sense or legal, narrow way as an administrator of an estate, but that they administer the public affairs as a prudent business man would administer his business, keeping always within the limitations imposed by law.

"It is impractical to exchange the proposed refunding bonds for the reparation bonds, for the reason that the latter bonds are held by people throughout the United States and probably in foreign countries, and the only efficient and effective method of changing the interest rate on these bonds is to issue and sell refunding bonds, procure the necessary money, and then issue a call for the redemption of the reparation bonds.

"In this contention we seem to be backed by precedent and hedged in by authority, for the reason that:

"'A municipal corporation does not incur a new debt or increase its indebtedness, within the meaning of constitutional or statutory limitations, when it * * * extends an existing indebtedness, as by issuing funding bonds, etc. 44 C.J. 1132, § 4065.'

"This is the law as announced by a number of decisions of both the federal and state courts throughout the United States. The case at bar presents a situation where an existing indebtedness created under a special law and to be amortized from taxes levied by the same law is to be merely readjusted and refunded for the sole purpose of reducing the interest rate. No new debt is created. The old debt is not paid, but continues to exist save only that the mere form of the evidence of that indebtedness is changed.

"'Bonds to liquidate, fund or refund indebtedness, as stated elsewhere in this article, bonds which are issued to fund a valid indebtedness do not create any new debt or increase the debt of the municipality within the meaning of the limita-

tions of the amount of municipal indebtedness generally.' 44 C.J. 1189, § 4160.

"Therefore, there remains no doubt in the court's mind that the obligation incurred by the defendant board under and by virtue of Act No. 2 of the Extra Session of 1927 will continue to exist after these proposed refunding bonds shall have been issued and sold and the reparation bonds redeemed. The proposed refunding bonds will stand in lieu and in place of the reparation bonds.

"The defendant board proposes to issue these refunding bonds under and by virtue of Act No. 28 of the Third Extra Session of 1934 and Act No. 29 of the Second Extra Session of 1935. The latter act provides:

" 'Section 1. That for the purpose of readjusting, extending or unifying the whole or any part of its bonds, certificates, certificates of indebtedness or any other existing indebtedness, outstanding on the date this Act takes effect, the Board of Levee Commissioners of the Orleans Levee District shall have full power and authority to issue negotiable interest-bearing refunding bonds in an amount not exceeding the amount of bonds, certificates of indebtedness and other existing indebtedness to be refunded and the interest due thereon.'

"This seems to be a legislative interpretation of its own act, giving the right to do what has been done in this case. The proposed refunding bond issue of the defendant board is clearly within the authority of the above quoted section.

"Section 4 of said act provides as follows:

" 'That in the event the revenues of the Orleans Levee District, after providing for the payment of all interest and principal maturities that may become due in any one year, and after having exhausted all available taxation authorized under the Constitution, shall be insufficient to provide for the contractual obligations, * * * it shall be the duty of the Treasurer of Louisiana to provide sufficient revenues for the purpose from moneys of the State not otherwise appropriated.'

"Under this section, it is clearly provided that the payment of the principal and interest of the refunding bonds is to to be made from funds secured from all available taxation authorized under the Constitution of the State. Act No. 2 of the Extra Session of 1927 is a constitutional amendment. That constitutional provision empowers the defendant board to levy a special tax of one mill on all property within the city of New Orleans for the purpose of remunerating the owners of property for any damage caused by the Caernarvon crevasse. It is a tax that has been collected by the defendant board for the purpose of meeting the payment of the reparation bonds issued under said act. The proposed refunding bonds are merely a substitution for the reparation bonds.

"It is a substitution of new bonds for the old bonds with the same obligations and the same liabilities and the same source provided by law for liquidating the debt.

"Therefore, the court is of the opinion that the holders of the proposed refunding bonds to be issued and sold by virtue of the resolution adopted by the defendant board on the 22d day of December, 1936, are subrogated to the rights of the holders of the bonds to be refunded, commonly known as reparation bonds; that these refunding bonds shall have the same lien on and be payable from the proceeds of the tax provided by Act No. 2 of the Legislature of the State of Louisiana at the Extra Session of 1927; and that the defendant board shall have the same right and authority to continue to collect the special one-mill tax provided by Act No. 2 of the Extra Session of 1927, and to use the proceeds of said tax to meet the principal and interest of the proposed refunding bonds as the same shall become due and payable.

"For these reasons there will be judgment in favor of the Board of Levee Commissioners of the Orleans Levee District. New Orleans, January 6, 1937."

From the foregoing, it is obvious that the board is reducing the taxpayers' burden through the refunding process. The board is, therefore, making the obligation less onerous in securing a better rate of interest. The board's right and authority to do so, if not expressly granted by law, is clearly implied. A different case would be presented if they were trying to increase the rate of interest. We may further observe that refunding an existing obligation or debt is not synonymous with payment in full of the debt or obligation.

For the reasons assigned, the judgment appealed from is affirmed.