## Napier v. Roberts.

### (Decided November 16, 1916.)

### Appeal from Leslie Circuit Court.

Elections—Primary Elections—Defeated Candidate in Primary May Have Name on Ballot in General Election.—There is nothing in the primary election law in Kentucky, as amended by the act of 1914, to prevent a defeated candidate for a party nomination from having his name printed on the ballot for the general election as an independent candidate under an independent device selected by him, as prescribed by section 1453 of the Kentucky statutes; and if, at the general election, he defeats the party candidate who defeated him in the primary, his election will be valid, and the fact of his being defeated in the primary and afterwards becoming an independent candidate will not be grounds for contesting his election.

HOGG & JOHNSON, NICKELL & TYRES, J. K. P. TURNER and F. J. EVERSOLE for appellant.

FAULKNER & FAULKNER, FAULKNER & STANFIELD, WOOTTEN & MORGAN, LEWIS & LEWIS, JOHN B. EVERSOLE and HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The question involved in this case is the right to the office of Commonwealth's Attorney for the Thirty-third Judicial District of Kentucky. The appellant and appellee were rival candidates in the August, 1915, primary election for the Republican nomination for that office, and as a result of the election the appellant was by the properly constituted authorities declared the nominee of such party, he being found to have received 150 votes more in the primary than did the appellee. Afterward, and within the time prescribed by law, appellee instituted a contest against appellant, in which contest various grounds were alleged in support of the

contention that the appellant had not legally received the nomination, but that appellee had so received it. This contest was abandoned, or at any rate was never tried, because, as appellee alleges, for one reason and another he was unable to procure a judge to try the case in time to obtain the certificate necessary to get his name upon the ballot to be voted for at the regular November election. When he found, as he claims, that he would be thus unable to try his contest, he procured by petition, as is prescribed by Sec. 1453 of the Kentucky Statutes, his name to be printed on the ballot for the regular November election as an independent candidate for the office of Commonwealth's Attorney, with his own picture for his device. At the regular November election he received, on the face of the returns, 157 more votes than did appellant, and was duly awarded the certificate by the legally constituted canvassers of the returns.

This suit, contesting appellee's right to the office, was in due time filed by appellant, in which many grounds for the contest were alleged, but all of them have been abandoned except one, it being that inasmuch as appellee was a candidate for the Republican nomination for the office in contest at the August, 1915, primary, he was not entitled to have his name printed upon the ballot for the regular November election for the same office as an independent candidate.

There is no question about the regularity of the petition required by section 1453 of the statutes, nor is there any question, as the case is now presented before us, concerning illegal or fraudulent votes, or as to the majority of votes which appellee received in the general election; the only question being the right of appellee to have his name printed on the ballot as an independent candidate, after having participated in the primary. The trial court disallowed the contentions of the appellant, and rendered judgment in favor of appellee, from which this appeal is prosecuted.

A number of Kentucky cases are relied upon, but we find no application for any of them, under the facts of this case, unless it be the case of Francis v. Sturgill, 163 Ky. 650. In that case the parties were candidates for the Democratic nomination for the office of County Court Clerk for Knott County in the primary election of 1913. Francis received a majority of the votes and

was duly declared the nominee of the Democratic party for that office. In that same primary the Republican party made a nomination, and, following the primary, for some unexplained reason, the Republican nominee withdrew and declined to run, whereupon Sturgill was nominated by the Republican committee as its candidate for County Court Clerk, and at the general election he received 31 votes more than Francis. He was given the certificate of election. Francis instituted a contest which, in the lower court, was decided against him, but upon appeal the judgment was reversed and Francis awarded the office. The general tenor of that decision is that one who becomes a candidate in a *party* primary cannot, if he is defeated, after the primary become a candidate of an *opposing party* which likewise participated in that same primary election. The reasons which prompted the court to so hold are given in the following language:

"In enacting the primary election law it was the manifest intent of the Legislature to relieve the voters of the State of the corrupt and unfair methods which had so long obtained in the proceedings of political parties, particularly in the methods of making nominations, and to protect the voters of all political parties from the arbitrary domination of corrupt political bosses and designing politicians, of whatsoever party. This being so, it is improbable of belief that the Legislature could have contemplated that one who seeks, in a primary election as did appellee, the nomination of his party for office, against another of like political faith, would, after suffering defeat at the hands of his opponent, have the right at the regular election to seek election to the same office against such opponent by procuring, at the hands of the committee of an opposing party, the placing of his name on the ballot under its device as the nominee. Such a method of securing a party nomination is not consonant with good faith or fair dealing, and its approval by us would defeat the paramount object of the primary law and destroy its efficacy. It will not, we dare say, be contended that it would have been permissible for appellee to be a candidate at the primary for the nomination for county clerk at the hands both of the Democratic and Republican parties, or for him to have been a candidate at the November election under both the Republican and Dem-

ocratic devices; how then could he rightfully be a candidate for a nomination at the hands of one of these parties at the primary, and run as the nominee and under the device of the other at the subsequent November election?"

Further along, and in summing up the conclusions reached, the court says:

"It is our conclusion, therefore, that as the provisions of the primary election law would have excluded appellee, a member of the Democratic party, from procuring the placing of his name on the Republican ballot at the primary as a candidate for the nomination of that party to the office of county court clerk of Knott County, he was not, after his defeat in the primary for the Democratic nomination for the office in question, eligible to nomination therefor by the Republican committee of Knott County; and, therefore, that the action of the committee making him the nominee of the Republican party and causing his name to be placed on the ballot for the regular election as such, under the device of the Republican party, was without authority and void. We do not mean to be understood as holding that appellee's name could not have gone on the ballot for the regular election at all, because there is nothing in the provisions of the primary election law which would have prevented him from getting his name on the ballot by petition as an independent candidate for the office, under a device other than that of a political party."

It will be noticed that the controlling idea running throughout that opinion is that a candidate for the nomination of a particular *party,* if defeated, may not become a candidate of the opposing *party,* and which likewise participated in the primary election, for that *same* office in the general election following the primary. In other words, it is recognized, and the decision is based upon such recognition, that the only participants in primary elections are those aggregations of voters who, in sufficient numbers, are entitled, under the terms of the primary election law, to be called political *parties.* There is no provision anywhere in the primary election law with reference to an independent candidate for any particular office at the general election; in fact, in the very nature of things, there could be no such party as the independent party, for the very meaning of the term

implies that those calling themselves independents are disconnected from any political party recognized by the law. They do not propose to exercise any allegiance to any such political party, but, on the contrary, to be independent of any of them. The only way provided by law through and by which a candidate who is not the nominee of a political party may get his name printed upon the ballot for the general election is under the provisions of section 1453 of the statute, and which section does not prescribe any qualifications for the independent candidate save and except such constitutional or statutory qualifications as may be required for that particular office. If the primary election has no application to an independent candidate, it is difficult to see how it could be applied so as to defeat the right of any legally qualified person from becoming an independent candidate. The fact is that it is universally known that a candidate of a political party enters his race with the advantage that in all probability he will secure the votes of that party in the territory where the office is to be filled, whether the electors are acquainted with him or not, and to prevent such electors from being imposed upon, by having thrust upon them candidates not of their own choosing, but of political bosses and corrupt political machines, the primary election law was enacted, and to further the intent and purpose of it the interpretation was given to it as found in the Francis case. There is no such opportunity for the perpetration of fraud upon the individual voter by having one's name printed as an independent candidate. He enters the race without the prestige of a party following, and necessarily must be dependent for his votes upon the knowledge which the individual voter may have concerning him and his qualifications. In other words, there is no party emblem in his case, by means of which the individual voter might be deceived and thereby caused to vote for possibly a corrupt or incompetent candidate who may have secured a place under the party emblem, through the machinations of corrupt political machinery. If the voter affiliates with a particular party, he either has to vote for all the nominees placed under the emblem on the ballot, or, if he should fail, be taunted by his party associates with being at least a pro tanto bolter. It was the purpose of the statute, as interpreted in the Francis case, supra, to guarantee to

the individual voter that the nominees under his party emblem had been made such through the open, fair and uncontaminated manner pointed out by the statute. The independent voter needs no such protection, because he knows that no independent candidate is nominated through any sort of party machinery, and that the names of such candidates are printed on the ballot when the easy formalities of the law are complied with. There is therefore no incentive for the independent candidate to be voted for except for the honest purpose of improving public service by electing the independent candidate.

It must not be forgotten that under the provisions of section 1454 a candidate, after having been nominated, may, in the manner therein pointed out, have his name printed as an independent candidate upon the ballot for the general election, and not as a candidate of the party which gave him the nomination. It is true that the nomination therein referred to is one spoken of as having been made by a convention, but there is nothing in the primary election law, as we read it, which would prevent the candidate nominated in a primary from directing those authorized to print the ballots from placing his name in an independent column thereon. However this may be, we do not feel authorized to extend the rule further than that given to it in the Francis case. The rule announced in the Francis case is for the purpose of protecting the purity and fairness of primary elections, and necessarily could not apply except as to political parties which might participate in the primary election. As there is no reason why the rule should apply to an independent candidate, it follows that the principle of that case could have no application under the facts we have here. It will be noticed that in the Francis case this language is used:

"We do not mean to be understood as holding that appellee's name could not have gone on the ballot for the regular election at all, because there is nothing in the provisions of the primary election law which would have prevented him from getting his name on the ballot by petition as an independent candidate for the office, under a device other than that of a political party."

It is claimed, however, that this statement of the court is dictum only. It might be seriously questioned as to whether the statement referred to is purely dic-

tum. It is true that the successful candidate in the case then being considered did not procure his name printed on the ballot at the general election as an independent candidate, as did appellee in the instant case, but it is equally true that the court had under consideration the right of a defeated candidate in a primary election to be voted for in the general election for the same office for which he sought a nomination in the primary. However this may be, and considering the statement as being purely dictum, it is not thereby stripped of all soundness of reason, and we think it contains a very clear statement of the right of the appellee to become an independent candidate in the general election, under the facts of this case. Nor do we think that the present primary election law, which was enacted in 1914, amending that of 1912, under which the primary election involved in the Francis case was held, affects the question here involved. Practically the only change consists in the declaration which the proposed candidate in the primary is required to make. Under the 1912 statute the candidate was required to make a statement and to get certain petitioners who were required to make prescribed statements relative to the candidate in order to get his name printed on the ballot. The 1914 statute requires an affidavit to be made by the candidate embodying practically the same facts, and the statement of two other persons belonging to the same political party touching the party allegiance of the candidate. Manifestly these minor changes cannot affect the question we have here.

Our attention is called to the case of State ex rel McCarthy v. Moore, 87 Minn. 308, as upholding the contention of appellant herein. Upon examination it will be found that the primary election law of Minnesota, under which the nomination was made, expressly forbade any defeated candidate participating in that primary election becoming a candidate and having his name printed upon the ballot to be voted at the subsequent general election, either as an independent or as the candidate of an opposing party. Clearly the case, being governed by such a statute, has no application to the case being considered. On the contrary, it would seem to fortify the position of appellee at least to the extent that the legislature of that state thought that unless prevented by the statute the defeated candidate

in a primary for a party nomination might subsequently become an independent candidate in the general election, and by anticipation the statute provided against any such consequence.

In conclusion it may be said that while it is the policy of the law to uphold and guarantee, as much as possible, fairness, honesty and purity in elections, it may be also considered a rule of equal public importance that the individual voter should not be deprived of the opportunity of choosing a public servant from among those who may seek the place, unless the plain or manifest purpose of the law demands it. We are convinced that there existed no obstacle in the primary election law under consideration preventing the appellee from becoming an independent candidate for the office of Commonwealth's Attorney in the manner he did, and that the trial court was correct in so holding.

Wherefore, the judgment is affirmed.