149 P.2d 120

**ROBERTS v. CLEVELAND, Secretary of State.**

No. 4852.

Supreme Court of New Mexico.

May 12, 1944.

R. C. Garland and J. Benson Newell, both of Las Cruces, for relator.

Edward P. Chase, Atty. Gen., and C. C. McCulloh, Harry L. Bigbee, and Robert W. Ward, Asst. Attys. Gen., for respondent.

BICKLEY, Justice.

The relator, being qualified to hold the office of Congressman, presented his declaration of candidacy for the nomination for such office as the candidate of the Republican Party at the ensuing general election.

The respondent refused to accept this declaration for filing on the ground that relator was barred by the provisions of 1941 Comp. Sec. 56-809, as amended by Laws 1943, c. 86, § 3, because he had changed his party affiliation within twelve months prior to the issuance of the proclamation by the Governor calling the forthcoming primary election.

It is not disputed that the respondent correctly appraised the facts.

Relator's contention is that the provisions of the Primary Election Law:

"No person shall become a candidate for *nomination* for any office who has changed his party affiliation within twelve [12] months prior to the issuance of the proclamation herein required by the Governor of the State of New Mexico" (emphasis supplied), is unconstitutional for two reasons:

(1) It restricts the qualifications of persons who are qualified to hold the office of Representative in Congress of the United States; and

(2) It denies to the relator the equal protection of the law. The latter contention is not seriously argued, if at all, and we deem it unnecessary to discuss its lack of merit.

As to relator's main contention, we think the difficulty arises from a failure to keep clearly in mind the difference between the qualifications of a person to hold the office of Congressman and the qualifications to enter the contest in the Primary Election for the nomination of the Republican Party as its candidate for said office.

It is properly conceded by the Attorney General that the state legislature cannot add to or subtract from the qualifications to hold the office of Congressman.

It is our view that the legislative provisions assailed have not attempted to do so.

The difficulties and inconveniences of securing an expression of the popular will through the Town Meeting and other early forms of selection of candidates resulted in the formation of political parties, nominations by conventions which, in turn,

for sundry reasons gave way to nomination by the filing of nomination papers, so as to participate in a primary election. The right regulated is the original right of any qualified person to become a candidate of a political party. In the construction of election laws we cannot therefore lose sight of the fact that the regulations imposed are not conditions upon compliance with which the right comes into being, but are regulations intended merely to regulate the exercise of the right in an orderly way.

█ Our statute providing for primary elections recognizes the existence of organized political parties and their right in general to regulate and control their own organizations for the purposes for which they are created, subject to statutory regulations. It imposes upon them certain restrictions as to the method of presenting their candidates to the voters at the general election. In the construction of the various statutes involved, we must consider both the right of the voter and the right of the candidate, and of the party he seeks to represent. Every voter has a right to be a candidate for a public office if he possesses the qualifications required to fill the office. It does not necessarily follow that he can be the candidate of a particular political party. The statute provides when and how one may be a candidate of a political party. If he cannot fill the requirement so as to be the candidate of the political party of his choice, he may still be a candidate at the general election by petition. The right of the voter to vote at the general election for whom he pleases cannot be limited. Whether the legislature can limit the voter in selecting a candidate for the various parties might be a debatable question, but is not here debated. The important question here presented is as to the power of the legislature to protect the various political parties in their right to present candidates at the general election who affiliate with the party that presents them. And, if the legislature has such power, has it also the power to establish reasonable tests of the sincerity and substantiality of such party affiliation?

At § 137 of the article on "Elections" in 20 C.J. is the following:

"Under some statutes, a party may nominate as its candidate one affiliated with another party, but under others this is prohibited." 29 C.J.S., Elections, § 131.

See also 29 C.J.S., "Elections", § 114, where it is said:

"The primary election laws of the various states impose certain requirements on a candidate at a primary election, and in accordance with these statutes the candidate may be required to file a paper in some prescribed form containing his declaration of candidacy and certain statements or affidavits as to his qualifications, *party affiliations,*" etc. (Emphasis supplied.)

See also 18 Am.Jur. "Elections", Sec. 154, p. 282.

█ After having had the convention system for a long time with its supposed evils of "fusions" and "boss control", which impaired the idea of party responsibility

and integrity, supposed by many to be detrimental to our government, the legislature, being doubtless familiar with various methods including both open and closed primaries, adopted what is commonly called the closed primary. This contemplates that each political party shall have the right to select its own candidates, and shall have such protection as the law can afford in exercising that right. To this end it was necessary, and no doubt within the power of the legislature, to prescribe certain qualifications.

It is not necessary, in order to preserve the rights of the voter at the general election, that the name of a candidate should be printed on the ballot unless he is a candidate of a political party; and the legislature, in order to carry out the idea of a closed primary, may well provide that the average voter shall not be deceived by a statement on the ballot at the general election that a candidate belongs to or affiliates with a designated political party when such candidate has not so affiliated and he has neglected and refused to state that he affiliates with the party whose nomination he seeks. In every instance in which the statute, as it now is, mentions the qualifications of a candidate of a political party at the primary election, it prescribes affiliation with the party for which he proposes to be a candidate as a necessary qualification. Voters must declare their party affiliation, or the absence of it, when they register. Likewise, they must declare their party affiliation when they sign nominating petitions and also when they vote at the primaries; and if their right to vote is challenged they must then declare their party affiliation. The law requires that a record be kept of the party affiliations of voters. In all the instances provided by the statute the candidate for nomination at the primaries must declare his party affiliation. The right to be a candidate at the general election by the "write in" method is provided for. He may be such candidate, independently of all parties; or, if he affiliates with any political party he may have his name upon the ballot at the general election as the candidate of that party provided he comes within the regulations and restrictions provided in the Primary Election Law. And it has been suggested that there are other methods whereby a person who is not the nominee of one of the dominant political parties may be a candidate at a general election, but as to this we express no opinion.

But no political party under our system can be compelled to put forward as its candidate one who does not affiliate with it. The voter at the general election may vote for whom he pleases but may not be deceived by false labels. It surely is within the power of the legislature to prevent such deception, and we think it clearly appears that it was intended to do so and, likewise, that it was not intended to enlarge upon or subtract from the constitutional qualifications of our citizens to hold public office. We are determining the

qualifications for nomination as the candidate of a political party, and not the right to be a candidate for election to the office.

▮ Suppose relator in this case had presented himself to the judges of a primary, represented himself as a Democrat, and asked for a Republican ticket to vote the same. Would there be any doubt about the judges' right to refuse him a ticket? Under the statutes he would not be a qualified voter at such Republican primary. If he is not a qualified voter, it is difficult to understand how he could be a qualified candidate. The same spirit runs throughout as to the voter and candidate in connection with the party primary. The purpose of the primary is to enable the rank and file of each party to nominate the party's representatives for public office. The relator could not as a Democrat consistently claim a Republican nomination. The natural justice of the situation, as well as the clear legal right, would be against him.

Indeed, as we understand relator, he does not claim that the portion of Ch. 86, L. 1943, which is amendatory of 1941 Comp. Sec. 56-809, which declares: "No person shall become a candidate for nomination of any political party except the party with which such person shall be shown to be a member by his affidavit of registration" offends the constitution.

▮ Counsel for relator were not in entire harmony in their discussion in support of relator's contentions, but we gather from the argument that it is their view that even if the last-quoted provision is a reasonable exercise of legislative authority, that still the provision that: "No person shall become a candidate for nomination for any office who has changed his party affiliation within twelve (12) months prior to the issuance of the proclamation herein required by the governor of the state of New Mexico" is an unreasonable exercise of legislative authority in the interest of party integrity.

We do not think so.

Various tests of the sincerity and substantiality of declared party affiliations have been employed by the legislatures of other states. Some are content with a declaration of future affiliation and intent to support the party's principles and candidates; others are that the candidate make a sworn declaration that he affiliated with such party at the last preceding general election and that he voted for a majority of the candidates of the party at such election and intends to so vote at the ensuing election. It is apparent that such a test, which is a frequent one, requires a greater peri<sup></sup> of time for its operation than does our statute. Yet, no decision has been called to our attention holding that such a test is unreasonable.

We have examined all the judicial decisions cited by the relator and we conclude that they do not support the principles for which the relator contends.

Our views are supported in one way or another by decisions in the following cases: Lett v. Dennis, 221 Ala. 432, 129 So. 33; Swindall v. State Election Board, 168 Okl. 97, 32 P.2d 691; Manning v. Young, 210 Wis. 588, 247 N.W. 61; State ex rel. Murphy v. Graves, 91 Ohio St. 36, 109 N. E. 590; State ex rel. Curyea v. Wells, 92 Neb. 337, 138 N.W. 165, 41 L.R.A.,N.S., 1088; State ex rel. Hall v. Hildebrand, 168 So. 531, 124 Fla. 363; Socialist Party v. Uhl, 155 Cal. 776, 103 P. 181; Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795; People ex rel. Lindstrand v. Emmerson, 333 Ill. 606, 165 N.E. 217, 62 A.L.R. 912; Glenn v. Gnau, 251 Ky. 3, 64 S.W.2d 168, 90 A.L.R. 1355; State ex rel. O'Sullivan v. Swanson, 127 Neb. 806, 257 N.W. 255. See also cases cited to the C.J. and C.J.S. texts cited supra.

An interesting question has been injected into the consideration of this case involving the duty of the Secretary of State under the primary election laws. Sec. 56-810 of 1941 Comp. provides:

"The county clerk and the secretary of state upon receipt of the declaration and petition required hereunder accompanied by the required filing fee, shall if such declarant is eligible to hold the office for which he seeks nomination under the Constitution and laws of the state of New Mexico receive and file such declaration and petition."

It has been suggested that the foregoing provisions describe the boundaries of the discretion which the Secretary of State has to exercise in the premises. On the other hand, it is suggested that since the 1943 amendment to 1941 Comp., Sec. 56-809 provides that:

"No person shall become a candidate for nomination for any office who has changed his party affiliation within twelve (12) months prior to the issuance of the proclamation herein required by the governor and the state of New Mexico.

"No person shall become a candidate for nomination of any political party except the party with which such person shall be shown to be a member by his affidavit of registration."

it is the duty of the Secretary of State to refuse to file the declaration of candidacy and nominating petitions unless convinced that the declarant not only is eligible to hold the office but also is eligible to become a candidate for the party of his declared affiliation, and that he has not changed such party affiliation within twelve months prior to the issuance of the Governor's proclamation.

In conference we were in some perplexity as to the extent to which the Secretary of State is entitled to go, or is required to go, in determining the eligibility of the declarant to hold the office for which he seeks nomination and his eligibility to enter the contest for the nomination of his party for office at the ensuing general election. One view is that the Secretary of

State, being to a large degree a ministerial officer, is not properly circumstanced to determine these more or less intricate questions, and that such officer should receive and file declarations of candidacy and nominating petitions accompanying such declarations, if they are substantially in compliance with the statute, leaving to interested parties by appropriate action to raise such questions.

The relator in the case at bar, in presenting his complaint, did not raise these questions but asked for a decision solely upon the broader question of the alleged unconstitutionality of the primary election statute as having the effect to enlarge or restrict the qualifications for holding the office of Congressman which are stated in the Constitution of the United States. We therefore deem it inadvisable, on account of the short time available for consideration of the question presented by relator and our decision thereon in order that the relief sought by relator, if entitled thereto, may be effective, to go into or reach a conclusion upon the intricate question heretofore suggested, if indeed, we are warranted under the state of the record in doing so, and therefore a decision thereon is reserved.

It follows from what we have said that the alternative writ of mandamus heretofore issued should be dissolved, and it is so ordered.

SADLER, C.J., MABRY and THREET, JJ., and ARMIJO, District Judge, concur.