[Civil No. 4732.  Filed July 14, 1944.]

[150 Pac. (2d)  758.]

In re: Proceedings to Establish Validity of $7,332,000 Principal Amount Refunding Corporate Bonds, Bond Issue Number One, of Salt River Project Agricultural Improvement and Power District, B. F. REICHENBERGER, E. A. MARSHALL and THE BANK OF DOUGLAS, Appellants, v. SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT and POWER DISTRICT, Appellee.

Messrs. Snell, Strouss & Wilmer, for Appellants.

Messrs. Darnell & Robertson, for Appellee.

ROSS, J.—This is a suit by the Salt River Project Agricultural Improvement and Power District to have determined the validity of a proposed refunding bond issue, and it is brought in pursuance of Section 75–745, Arizona Code Annotated 1939. The petitioner is an agricultural improvement district. In 1937 the electors of said district authorized it to issue its bonds for the purpose of financing or refinancing obligations of the Salt River Valley Water Users Association.

The first bond issue under such authorization, designated as Bond Issue Number One, was for $9,969,000 and was a first lien on the real property of the district. The second issue, dated June, 1940, was for $1,000,000, and the third issue, dated October, 1940, was for $2,500,000.

The board of directors of the district at a meeting on March 27, 1944, authorized the district to issue its refunding bonds in the amount of $7,332,000. These refunding bonds were not authorized by a vote of the electors of the district, as were the bonds issued for the purpose of financing or refinancing the obligations of the Water Users Association. Under their terms the refunding bonds were to have and retain the same priority of lien as the bonds refunded. That is, the refunding bonds were to be a first lien on the district's property on a parity with the bonds of Bond Issue Number One *not* refunded and prior to the lien of Bond Issues Numbers Two and Three.

The proposition is to exchange these refunding bonds for series A and B bonds of Bond Issue Number One. Series A and B bonds bears interest at 4¼% per annum and are callable January 1 and July

1, 1948. Bonds of Bond Issue Number One becoming callable after 1948 are not to be refunded. The refunding bonds will bear interest at 3% per annum. The district, however, as a part of the exchange of bonds contracts to pay to these bondholders the full amount at their present interest rate to the 1948 maturity date. The refunding bonds become callable in 1964. Bond Issue Number One, as also refunding bonds, are guaranteed by the Water Users Association.

Appellant Reichenberger, a property owner in the district, appellant Marshall, the owner of one of the bonds of Bond Issue Number One *not* to be refunded, and appellant The Bank of Douglas, the owner of a bond of Bond Issue Number Two and Bond Issue Number Three, contest the validity of the refunding bonds on the grounds, (1) that the district is without power or authority to issue refunding bonds, (2) the refunding bonds could not be issued without a vote of the electors, and (3) that the refunding bonds are invalid because they are made a lien on the property of the district, on a parity with the bonds of Bond Issue Number One *not* refunded, and superior to the lien of Bond Issues Numbers Two and Three, in contravention of Section 75–728, Arizona Code Annotated 1939.

Judgment was entered establishing the validity of the bonds, and it is from this judgment the appeal is taken.

We will consider the grounds upon which appellants contest the validity of the refunding bonds in the order stated above. In Sections 75–701 to 75–748, Arizona Code Annotated 1939 is found the authority for the organization, operation and financing of irrigation projects for the reclamation of agricultural lands of the state. Among the powers available to owners of irrigable lands, if they will organize an

agricultural district, is the power to finance and *refinance* their obligations, or any debts incurred in the installation or equipment of their irrigation plant. Section 75–701, *supra*. After such district is organized and a board of directors elected and qualified, the power is vested in the directors to manage the business affairs of the district. Such powers are named in Sections 75–714 and 75–725, *supra*.

Under Section 75–714, the board of directors is empowered "to enter into, . . . all such contracts . . .; . . . to reduce the cost of irrigation, drainage and power to the owners of the lands in said district by the sale of surplus water or power produced, owned or controlled by the district, and the construction, maintenance, extension, replacement, financing and *refinancing* of the works useful for said purpose; or to finance or *refinance* as its own obligation all or any part of the debt heretofore incurred or hereafter proposed to be incurred by any public or private agency in the construction, maintenance, improvement or replacement of the structures and equipment necessary or useful for the accomplishment of any of the above purposes; either by the issue and sale of its bonds or by *exchange of its bonds for outstanding obligations* of such public or private agency or by assuming or guaranteeing the payment thereof; or for any one or more or all of said purposes . . . ."

██ We think these provisions of the law empowered the directors of the district to issue its bonds refunding its obligations. The district is specifically authorized to "exchange . . . its bonds for outstanding obligations" and that is what it has undertaken to do. An examination of the cases satisfies us that the power to issue bonds in the first instance included, by necessary implication, the power to refund the original bonds. *State ex rel. St. Charles County*

v. *Smith*, 348 Mo. 7, 152 S. W. (2d) 1, 135 A. L. R. 625 and annotations.

■ The second contention of appellants is that "the refunding bonds could not issue without a vote of the electors" of the district.

We would not hold with this proposition unless the whole context of the agricultural improvement act by its terms required us to do so. As a matter of fact, the refunding of Bond Issue Number One to the extent proposed does not increase the bonded debt, but on the contrary saves to the property owners of the district a considerable sum in the way of reduced interest. If the proposition was that the district should incur an additional bonded debt, clearly under the terms of the law it would have to be submitted to a vote of the property owners of the district. It will not create an initial indebtedness, but recognize and provide for the payment of the old debt at a lower rate of interest.

The contention of appellee is that Section 75–725, *supra,* does not require bond issues to be submitted to a vote of the property owners of the district unless the issue is necessary to raise "additional money." In other words, if the issue is to refund an already existing indebtedness, as for instance the indebtedness of the district to the Water Users Association, the district having voted Bond Issues Numbers One, Two and Three, it is not necessary that it vote bonds to refund such issues. This, indeed, is a common sense view to take, for why the necessity of voting on the reissue of a bond when the original issue was submitted to and approved by the voters of the district? The refunding bonds do not create new indebtedness nor change the character of the pre-existing debt. There is not involved in the issue of the refunding bonds any payment of the indebtedness, but merely a change in its form, with all rights, remedies and priv-

ileges carried over to the holders of the new bonds that pertained to the refundable bonds. .

To all of this we agree, but that does not dispense with a vote by the electors of the district authorizing the refund if the statutes require such an election. Section 75–725, *supra,* gives the board of directors of an agricultural improvement district power to do several things, and enumerates or describes them, then follows this language:

"For any one (1), or more or all of said purposes; the board of directors of any such district must, as soon after such district has been organized as may be practicable, also whenever thereafter the funds available for such purposes shall have been exhausted and it shall be necessary to raise additional money for said purposes, or any of the same, estimate and determine the amount of money necessary to be raised. Said board shall thereupon immediately call a special election at which shall be submitted to the electors of the district the question whether or not the bonds of such district shall be issued in the amount so determined. . . . If a majority of the votes cast at such election be 'Bonds—Yes' then the board of directors shall cause such bonds in said amount to be issued; if. a majority of the votes cast at such election shall be 'Bonds—No' the result of such election shall be declared by the board of directors and entered on its record, and, whenever, thereafter, a petition signed by one-fourth or more of the qualified electors of such district shall be presented to the board of directors, it shall so declare of record in its minutes, and shall thereupon submit such question to said electors of the district in the same manner and with like effect as at such previous election."

Under this, the directors first determine if it is necessary that additional money for any of the enumerated purposes be raised, and estimate and determine the amount thereof. If the directors determine that no additional money is necessary, the question,

notwithstanding, must be submitted to the electors. It makes no difference for which one of the purposes enumerated, it must be voted by the electors of the district at a special election called by the board. If it is to finance or refinance the debts or obligations of the district, or any of the other purposes enumerated in Section 75–725, *supra,* the electors of the district must authorize it by their votes.

■ There is no escape from this conclusion. Although we have strained ourselves to get around this provision of the statute, we can see no way to uphold appellee's contention unless we ignore the legislation on the subject. We have frequently said we cannot legislate; we cannot make the law. Our province is to construe the law as written, and if we do that in this case we must hold the district is without power to refund such bonds without a vote of the electors thereof authorizing such refunding.

■ It is next contended by appellants that the refunding bonds when issued will not retain the status of the bonds for which they were issued because to give them the status of a first lien would violate the terms of Section 75–728, Id., the material portion of which reads:

"All bonds issued under the provisions of this article shall be a lien upon the real property included in the district, and the lien for the bonds of any issue shall be a preferred lien to that of any subsequent issue. . . . "

As we have seen, the proposed refunding bonds do not create new indebtedness nor change the essential characteristics of the pre-existing debt. There is not involved in the issuance of the refunding bonds any payment of the indebtedness, but merely a change in its form, with all rights, remedies and privileges carried over to the holder of the new bonds that pertained to the refundable bonds.

" . . . A bond is not an indebtedness or liability; it is only the evidence or representative of an indebtedness. And a mere change in form of the evidence of indebtedness is not the creation of a new indebtedness within the meaning of the constitution. . . . " *City of Los Angeles* v. *Teed,* 112 Cal. 319, 44 Pac. 580, 582.

We entirely agree with the statement of the court in *Selby* v. *Oakdale Irr. Dist.,* 140 Cal. App. 171, 35 Pac. (2d) 125, 130, wherein it is said:

" . . . In the instant case it appears that the bonds held by the petitioner were issued in 1910, but it also appears that a large percentage of the refunding bonds now held by the interveners and others are simply converted bonds of issues preceding the amendment of the section in 1917, and if justice required, a court of equity would be, we think, justified in holding that the prior lien, if any, given to the issues preceding the amendment, was carried over, entered into, and became a substantive part of the refunding bonds, just as the lien created by an original mortgage is carried over and becomes an integral part of the instrument renewing the security given to insure payment of the original obligation."

We cite as holding to the same or like effect the following cases: *State* v. *City of New Smyrna Beach,* 148 Fla. 482, 4 So. (2d) 660; *State* v. *Cave,* 193 La. 419, 190 So. 631; *Tonry* v. *Board of Levee Com'rs,* 186 La. 159, 171 So. 836; *In re Beaver Drainage Dist.,* 244 Wis. 603, 13 N. W. (2d) 76.

For the reason that the question of refunding the Agricultural Improvement District bonds was not submitted to the electors of the district, the judgment of the lower court is reversed.

McALISTER, C. J., and STANFORD, J., concur.