333 P.2d 967

Cecil CAVENDER and Richard J. Dowdall, Appellants,

v.

The BOARD OF SUPERVISORS OF PIMA COUNTY, Lambert Kautenburger, Thomas S. Jay and Dennis E. Weaver, members of and constituting the Board of Supervisors, Appellees.

No. 6749.

Supreme Court of Arizona.

Dec. 22, 1958.

———◆———

Richard J. Dowdall, of Tucson, in pro. per., and as attorney for appellant Cecil Cavender.

Raul Castro, County Atty. for Pima County, and H. E. Rogge, Jr., Chief Deputy County Atty., Tucson, for appellees.

UDALL, Chief Justice.

Within ten days after the primary election held on September 9, 1958, appellants Cecil Cavender and Richard J. Dowdall, qualified electors of Pima County, sought to have their names placed on the ballot for the general election to be held on November 4, 1958, the former as a candidate for County Supervisor (District No. 2), and the latter as a candidate for State Representative (Legislative District No. 9). The Board of Supervisors of Pima County, appellees herein, refused to accept the certificates of nomination filed in behalf of appellants pursuant to the provisions of A.R.S., Title 16, chapter 6, which is entitled "Nomination Other Than By Primary Election".

Appellants filed application in the superior court for a writ of mandamus against appellees and an alternative writ issued, but after a hearing thereon, the lower court, on October 3, 1958, entered judgment quashing the alternative writ. This appeal followed. Time being of the essence, we gave immediate consideration to same. A skeleton record was filed and the rules governing appeals suspended. Briefs by respective counsel were immediately forthcoming and the matter was orally argued on October 14, 1958 and submitted for decision. Two days later, by an appropriate minute entry, a majority of the court ordered that the judgment of the lower court be reversed with directions that the board of supervisors be ordered to place the names of both appellants on the general election ballot in accordance with the provisions of A.R.S. § 16–844, subd. 2. It was stated that a written decision in accordance with the constitutional requirement (article 6, section 2, A.R.S.) would follow. We now state our reasons for the action taken.

The facts were stipulated to by the parties, hence the questions presented for our determination are purely matters of law. Both appellants are registered democrats; Cavender sought the democratic nomination for county supervisor (the same post he now seeks) in the primary election but was defeated; however, Dowdall was not a candidate at the primary for any nomination. It is conceded that both appellants, if elected, were qualified to hold the offices they seek.

It is the position of appellants—with which we agree—that irrespective of party registration, or whether they were or were not candidates for a party nomination at the recent primary election, they have an absolute right to secure a place on the general election ballot providing they comply with the provisions of A.R.S. § 16–601, supra, the pertinent portions of which read:

"A. Candidates for public office may be nominated otherwise than by primary election or by party committee in the manner set forth in this section.

"B. A certificate of nomination stating the name of the office to be filled, the name and residence of the candidate and other information required by this section, shall be filed with the officer with whom primary nomination papers are required to be filed within ten days after the primary election. The certificate shall be signed only by voters who have not signed the nomination papers of a candidate for the office to be voted for at the last primary election, and who have not voted for any candidate for that office at the primary election.

"C. The certificate of nomination shall be in substantially the following form:

\*    \*    \*    \*    \*    \*

"I hereby declare that I have not signed the nomination papers of any candidate to be voted for at the last primary election, and that I did not vote for any candidate for such office at the last primary election, and I do *hereby select the following designation under which* name the said candidate shall be placed on the official ballot (here insert such designation not exceeding three words in length as the signers may select). (Emphasis supplied.)

"Names of signers. Place of residence. Date of signing."

It was stipulated that the petitions filed by appellants met all of the requirements and conform in every way with the provisions of section 16–601, supra. Appellants maintain that it was solely for the purpose of meeting the statutory requirement as to *selecting a designation* that they inserted in their petitions, in each instance, the words "Clean Government". Appellants earnestly insist that by using this designation they had no intention of creating—nor did they thereby create—a new political party.

Appellees, on the other hand, advance the following proposition of law, viz.:

*"a person has no legal right to be a candidate for a political office under a political designation that he is not affiliated with by registration.* (Emphasis supplied.)

As applied to our problem this is a deceptive statement; we readily agree (1) that one seeking a party nomination for an office in the primary must be affiliated by registration with such party, and (2) that one may not be a candidate at the general election, e. g., of the Democratic, Republican, or Non-Partisan party, unless he is in fact registered with such party. However, it does not follow that because appellants Cavender and Dowdall are registered democrats they are ineligible to obtain a nomination under section 16–601, supra, this for the reason that the statute lays down no such requirement. It is

160

equally fallacious to assert that appellants are now in reality members of a newly created "Clean Government Party" and, not being registered as such, cannot find a place on the ballot under the column designated "Other Candidates". To sustain such an interpretation would completely emasculate and make wholly nugatory the statute in question. The legislature could not have intended that this statute be available only to the small fraction of unaffiliated voters. This section was to assure any elector an opportunity to run for office, and it should be remembered that in the general election there is but one ballot and an elector may vote for whom he pleases irrespective of party registration.

■ Furthermore, appellees claim section 16-601, supra, is in some manner violative of article 7, section 10, Constitution of Arizona. We are unable to perceive even the slightest merit to this contention. As a matter of fact the constitutional proviso merely contains a mandate:

"The Legislature shall enact a direct primary election law, which shall provide for the nomination of candidates for all elective State, county, and city offices, including candidates for United States Senator and for Representative in Congress." Art. 7, Sec. 10, Const. of Ariz.

Obviously this was not intended to make of the primary election statutes enacted pursuant thereto the exclusive method of nominating candidates. Basically, the primary election law was intended to supplant the abuses and evils of the party convention method of selecting candidates which had grown up in territorial days in favor of a direct vote of the people through the medium of a primary election. Historically it appears that the statute in question (section 16-601), essentially in its present form, has been a part of our laws since the turn of the century (See, Section 2320, Revised Statutes of Arizona 1901). Hence it manifestly appears this alternative method of securing a place on the general election ballot has, for more than fifty years, been available to an office seeker irrespective of whether candidates were nominated under the "party convention" system or the "direct primary" method. Since there is no limitation in article 7, section 10, supra, upon the power of the legislature to provide for "nomination other than by primary election", we hold the powers of the legislature upon the subject are plenary.

■■ This final question is presented: are either of the appellants precluded from having their names appear on the general election ballot by reason of their being registered democrats? The answer is no, because as we see it the official registration of appellants as democrats has nothing to do with their right to procure a nomination "other than by primary election" un-

der the provisions of section 16–601, supra. This statute does not limit such right to only those who are unregistered as to party affiliation. No mention is made of registration in this statute, hence we have no right to write such a proviso into the law. As a matter of fact a nominating petition under this statute may be signed by any qualified elector—irrespective of party affiliation—providing he can meet the other requirements as to not having voted for, or signed the primary nomination papers of any candidate at the primary for such office. Furthermore, as we interpret the statute, the mere fact that appellant Cavender was a defeated candidate in the primary election does not in any way affect his right to avail himself of the provisions of section 16–601, supra. This for the reason that the statute has no such prohibition contained therein. Cf. Broughton v. Pursifull, 245 Ky. 137, 53 S.W.2d 200; George v. Board of Ballot Com'rs, 79 W.Va. 213, 90 S.E. 550; Napier v. Roberts, 172 Ky. 227, 189 S.W. 206.

We take no stock in appellees' contention that appellants, by using, in parentheses, the designation "clean government" thereby created a new party, and not being registered with such party that they cannot avail themselves of the privilege granted by the statute followed in the instant case. The following proviso for placing the names of such candidates on the general election ballot clearly manifests the legislative intent, viz.:

" * * *. The names of all candidates nominated under the provisions of section 16–601 shall be placed in a single column at the right of the party columns and shall bear the heading in boldface type: 'Other candidates', and immediately under such headings the words: 'Vote separately for each office.' Immediately above the name of each candidate, in parentheses, shall be printed the designation prescribed in the candidate's certificate of nomination." A.R.S. § 16–844, subd. E.

The fourth column at the right—in which appellants' names would appear on the ballot—bears the title in bold face "Other Candidates". We submit that this very arrangement belies any interpretation that in such column are the candidates of a new party, to wit: "clean government". Candidates having true party status appear in the columns labelled Democratic, Republican, or Non-Partisan.

It should be noted that all of the cases relied upon by appellees in support of their contentions involve primary election problems. For instance, see, Roberts v. Cleveland, 48 N.M. 226, 149 P.2d 120, 153 A.L.R. 635, cited by them. Obviously such decisions are not applicable for ours is a general election problem.

While the questions here presented were not passed upon therein, it is interesting to note that in the case of Brooks v. Kerby, 48 Ariz. 194, 60 P.2d 1074, this court recognized that the plaintiff (Brooks) had the right—under the statute here in question—to secure a nomination other than by primary.

It is for the foregoing reasons that we reversed the judgment of the lower court.

WINDES and JOHNSON, JJ., concur.

PHELPS and STRUCKMEYER, Justices (dissenting).

We dissent from the majority opinion insofar as it relates to appellant Cecil Cavender. It is our view that when a person submits his name as a candidate for public office subject to the direct primary and is defeated, he has exhausted his right to be a candidate at the general election.

Art. 7, § 10 of the Constitution requires that the legislature enact a direct primary election law *"which shall provide for the nomination of candidates for all elective * * * offices * * *."* Now, primary elections have application only to regularly constituted political parties; so if this language has any significance, it must mean that the winner of the primary election as nominee goes on the general election ballot and the loser does not. Otherwise, the underlying political theory that the cranks and the incompetents will be weeded out is destroyed and the basic purpose of the direct primary that by a process of elimination the number of candidates of a political party will be reduced to one is defeated.

As is pointed out, the framers of the Constitution in adopting the direct primary system intended to remove the abuses which had grown out of the old convention plan wherein the most qualified candidate, at least insofar as the majority of the members of the party were concerned, was not always chosen because the control of the Convention often fell into the hands of a select few who were not responsive to the will of the majority. To this extent, the direct primary accomplishes the basic objective inherent in representative government; namely, that the will of the majority governs. We therefore believe that the majority opinion of this court not only thwarts the underlying principle of the direct primary as proposed by the Constitution, but circumvents the governing wish of the majority members of a political party. This practice, if countenanced, will inevitably result in defeating the will of the majority of the party at a general election.

For this reason we believe the judgment of the lower court as to Cecil Cavender should be affirmed.