333 P.2d 971

**BOARD OF SUPERVISORS OF PIMA COUNTY, Arizona, and Lambert Kautenburger, Dennis J. Weaver and Thomas Jay, the members thereof, Appellants,**

v.

**Robert G. HARRINGTON, Norman J. Liechty, David A. Searing and H. C. Kern, Appellees.**

No. 6751.

Supreme Court of Arizona.

Dec. 22, 1958.

Raul H. Castro, County Atty., Pima County, H. E. Rogge, Jr., and Marvin S. Cohen, Deputy County Attys., Tucson, for appellants.

Scruggs & Rucker; and J. Richard Hannah, Tucson, for appellees.

PHELPS, Justice.

This case comes to us on an appeal from the order and judgment of the superior court of Pima county making peremptory a writ of mandamus directed at the appellants ordering them to place the names of appellees Robert G. Harrington, Norman J. Liechty and David A. Searing on the ballot as candidates in the general election to be held in Pima County, Arizona, on November 4, 1958, for the offices of state representative of Legislative District No. 16; state representative District No. 4; state representative District No. 5 respectively, and that the name of H. C. Kern be placed on said ballots as a candidate for supervisor in supervisorial District No. 3 of that county.

This matter was fully argued to the court and ordered submitted on October 14, 1958. Time being of the essence, the court immediately took the matter under consideration and being fully advised in the premises a majority of the court rendered its oral decision on October 16, 1958, reversing the judgment of the trial court entered therein. The court then stated that a written decision would thereafter follow in accordance with the constitutional requirement (Art. 6, § 2, A.R.S.). We now reduce said oral decision to writing and state our reasons therefor.

The question presented both to this court and to the superior court is purely one of law.

The facts are that appellees are all affiliated with the Republican Party but did not present their names to the electors of Pima county in the direct primary election held on September 9, 1958 in the manner provided for in A.R.S. §§ 16–301 to 16–305 inclusive, enacted pursuant to Art. 7, § 10 of the Arizona Constitution.

After the primary election however, they sought to get their names placed upon the ballot of the general election under the provisions of A.R.S. §§ 16–601 and 16–844. The certificate of nomination provided for in § 16–601, supra, designated the name "Republican" as the designation under which appellees desired their names to appear upon the official ballot for the general election. The Board of Supervisors refused to comply with their demand. This action was instituted with the result above stated.

The specific question presented in this case is: after the primary election, may a person become a candidate for public office at the general election under the provisions of A.R.S. §§ 16–601 and 16–844, supra, under the party designation, in this case "Republican", where the Republican Party failed to nominate a candidate to such office at the primary election? This is a question of first impression in this court. Neither counsel has presented any authority on the subject and are both apparently of the view that there are no authorities. It must therefore be determined solely upon the interpretation of the Constitution, Art. 7, § 10, supra, and laws enacted pursuant thereto. The Constitution, Art. 7, § 10 provides that:

"The Legislature shall enact a direct primary election law, which shall provide for the nomination of candidates for all elective State, county and city offices, including candidates for United States Senator and for Representative in Congress."

This, of course, is mandatory. Art. 2, § 32 of the Constitution. Pursuant to said constitutional mandate the legislature enacted laws setting up the machinery for the nomination of all state, county and city offices at a primary election.

A.R.S. §§ 16–301 to 16–305 inclusive prescribe the procedure to be followed in order to become a candidate for public office and to have his name printed on the official ballot at said primary election for submission to the electors of the state. Included in the proceedings to be followed is the prescribed form of the nomination petitions bearing the names of the signers of qualified electors, the number of names required and the time within which and the place where such nomination petitions must be filed. A.R.S. § 16–502 provides that:

"At a primary election, *each political party* entitled and intending to make nominations for the ensuing general or

special election shall, if it desires to have the names of its candidates printed on the official ballot at such general or special election, nominate its candidates for all elective, senatorial, congressional, state, judicial, county and precinct offices to be filled at such election." [Emphasis ours.]

A.R.S. § 16–571 provides for a canvass of the votes cast at the primary election by the governing body designated therein for that purpose. Upon completion of said canvass such governing body shall declare the person who received the largest number of votes to be the nominee of the party for the particular office for which he was a candidate. Thereupon, he is issued a certificate of nomination which entitles him to have his name printed on the ballot at the ensuing general election.

A.R.S. § 16–601 provides in so far as material that:

"A. Candidates for public office may be nominated otherwise than by primary election or by party committee in the manner set forth in this section.

"B. A certificate of nomination stating the name of the office to be filled, the name and residence of the candidate and other information required by this section, shall be filed with the officer with whom primary nomination papers are required to be filed within ten days after the primary election. The certifi-

cate shall be signed only by voters who have not signed the nomination papers of a candidate for the office to be voted for at the last primary election, and who have not voted for any candidate for that office at the primary election."

Subsection "C" thereof prescribes the form of the certificate and the declaration of the signers of such certificate that they qualify as such signers under the requirements provided in subsection "B" and that they do thereby select the designation under which name said candidate shall be placed on the official ballot, inserting therein such designation not exceeding three words in length. Other things are prescribed in subsections "D" and "E" thereof which are not material under the issue raised herein.

A.R.S. § 16–844 prescribes the form of the official ballot to be used at the general election. Subsection "E" thereof provides the only matter material to the issues in the instant case which reads as follows:

"E. The lists of the candidates of the several parties shall be arranged with the names of the parties in alphabetical order, commencing with the left-hand column, and on the right-hand side of the ballot there shall be a column headed non-partisan. The names of all candidates nominated under the provisions of section 16–601 shall be placed in a single column at the right of the party column and shall bear the head-

ing in bold-face type: 'Other candidates', and immediately under such heading the words: 'Vote separately for each office.' Immediately above the name of each candidate, in parentheses, shall be printed the designation prescribed in the candidate's certificate of nomination."

A.R.S. § 16–502, supra, limits the operation of the direct primary to

" * * * *each political party* entitled and intending to make nominations for the ensuing general or special election * * *." [Emphasis ours.]

And § 16–503 states that:

"If no candidate is nominated in the primary election for a particular office, then no candidate *for that office for that party* may appear on the general or special election ballot." [Emphasis ours.]

And § 16–506, supra, provides that:

"No person shall have his name printed on the official ballot as a candidate in a general election unless he has complied fully with the provisions of law applicable to primary elections."

■ We believe we must construe §§ 16–502, 16–503 and 16–506, supra, together and when we do so we reach the irresistible conclusion that they are each directed at candidates of political parties. Section 16–503 in using the term *"no candidate for that office for that party"* clearly compels

this conclusion. Section 16–506, supra, simply places upon a candidate of such political party the duty to comply strictly with the provisions of the primary law. Otherwise, he will not get his name printed upon the official ballot.

■ It will be observed that the constitutional provision Art. 7, § 10, supra, intended the legislature to enact legislation to provide for the nomination of all elective state, county and city offices at a primary election. The court will take judicial notice of the historical fact that the direct primary was intended to replace the old convention practice of the political parties prior to statehood, and we believe it reasonable to assume that the framers of the state constitution intended its mandate to the legislature to enact legislation providing for a primary election to select nominees for elective state, county and city offices had reference to such political parties as then existed or as may be thereafter created, including non-partisan candidates as the legislature apparently construed it to mean.

■ There is no limitation in this provision of the state constitution upon the power of the legislature to provide for others who desire to seek public office to do so under a designated name other than the recognized political parties. In the absence of such limitation the powers of the legislature upon the subject are plenary. Section 16–601, supra, is a proper exercise of

168

that power, we believe, and gives the right to a person seeking a public office to have his name printed upon the ballot to be used at the general election by fulfilling the requirements set forth in § 16–601, subject only to the provisions of §§ 16–503 and 16–506, supra. It is clearly provided in § 16–503 that:

"If no candidate is nominated in the primary election for a particular office, *then no candidate for that office for that party may appear on the general or special* election ballot." [Emphasis ours.]

The appellants here have all designated the name "Republican" as the name under which they desire to present their candidacy for the offices they respectively seek. No candidates were selected for those offices by the Republican Party at the primary election. It follows that they were not entitled to have their names appear on the ballot at the general election. The language above used is all-inclusive. It does not merely prohibit their names from appearing in the Republican column on the ballots at the general election but, it prohibits the appearance of their names anywhere on the ballot.

Judgment reversed.

WINDES and STRUCKMEYER, JJ., concurring.

UDALL, Chief Justice and JOHNSON, Justice (dissenting).

We wholly disagree with the majority opinion reversing the judgment of the lower court. It is our view that all four of the appellees, as candidates for public office, were entitled to a place on the general election ballot under the column headed "Other Candidates". Our dissent was noted in the minute order of October 16, 1958, and we now state our reasons therefor.

Our general views on the scope, purpose and operation of the laws governing the right of a qualified elector who as a private citizen seeks to procure a nomination, other than by primary election, under A.R.S. § 16–601, and a place on the ballot as provided by A.R.S. subsection E of section 16–844, are quite fully set forth in the majority opinion in Cavender v. Board of Supervisors, 85 Ariz. 156, 333 P.2d 967 (a companion case decided this date), hence need not be repeated here.

We submit that the majority opinion is not based on the problem presented by the record before us. The opinion states:

"The specific question presented in this case is: after the primary election, may a person become a candidate for public office at the general election under the provisions of A.R.S. sections 16–601 and 16–844, supra, *under the party designation, in this case 'Repub-*

*lican', where the Republican Party failed to nominate a candidate to such office at the primary election? \* \* "* (Emphasis supplied.)

This does not at all square with what the learned trial court actually decided. As proof, we quote excerpts from the court's minutes of October 9, 1958:.

"The questions raised by the Petitioner and the answer thereto are very interesting, both as a practical matter and also as a legal matter. The respondents have taken such (sic) that the petitioners have no right to be placed on the general election ballot under the Republican column, and Court agrees with that position of the response. However, the petitioners further request that they be placed on the ballot under the column 'Other Candidates' as provided in Section 16–844 thereof, and particularly Subsection E.

"It is this Court's position that the right and true interpretation of 16–601, to conform with all the election laws in the State of Arizona and to give it a meaning that the Legislature intended that it should have provided a means for placing a candidate on the ballot other than by primary, and that a person complying with Section 16–601 is then bound by 16–844, Subsection E thereof, and as such cannot appear under any organized party designation under the general election column thereof, and that the only place that his name can appear is under the far right hand column designated 'Other Candidates'.

\*    \*    \*    \*    \*    \*

"The Court does hold that they are entitled to be listed as a candidate in the far right hand column under the column designated 'Other Candidates', and the Petitioner is instructed to prepare in proper order writ to conform with this ruling, ordering the Board of Supervisors to conform with the rulings of the Court as to such writ, by placing the candidate in that particular column on the ballot."

While it is not the issue presented by this appeal, we readily agree with the conclusion reached by the trial court, which is apparently shared by our brethren of the majority, that after a primary election there is no method by which the Republican party, *as such,* could nominate as its official candidates, and have placed under *its column* on the general election ballot, the names of appellees. (The only exceptions to this rule—none of which are in point here—are those set forth in A.R.S. § 16–604.) Hence, we feel that the lengthy discussion in the majority opinion relative to various constitutional provisions and Code sections dealing with primary election matters, are wholly beside the point.

Furthermore, to our minds, the fact that in the instant case the Republican party failed, in the primary, to nominate any-one for the four elective positions sought by appellees, is of no consequence, nor does it have any bearing upon the problem presented, because legally the situation would be the same had the Republican party in the primary completely filled up its ticket.

The majority, after reciting that appellees had used the word "Republican" as the designation to appear (in parentheses) immediately above their names in the column headed "Other Candidates", holds:

"* * * It follows that they [appellees] were not entitled to have their names appear on the ballot at the general election. * * * It does not merely prohibit their names from appearing in the Republican column on the ballots at the general election but, *it prohibits the appearance of their names anywhere on the ballot."* (Emphasis supplied.)

We believe this drastic holding is unwarranted. The record conclusively shows the issue as to use of the word "Republican" by the appellees was not passed upon by the trial court. We again quote from the minutes:

"The question was not argued or presented to this Court of whether or not all the petitioners had a right to designate the Republican Party and still appear on the right hand column under 'Other Candidates' column, and *therefore the Court is not passing on that point."* (Emphasis supplied.)

Therefore, a reversal upon this ground would appear to be wholly unjustified.

Next let us assume that what we consider the real issue had been properly presented and decided favorably to appellees by the lower court, i. e., that they might use the word "Republican" as a designation in the "Other Candidate" column; still we do not believe such a holding could be reversed for there is nothing in the statute that forbids such use. Under the statute one may utilize such designation as he chooses so long as he uses not more than three words for that purpose. Had the legislature deemed the use of the words "Republican" or "Democrat" misleading or deceptive it doubtless would have prohibited same. It is universally held that the wisdom of a statute is a matter for the legislature and not for the courts. Local 266, etc. v. Salt River Project Agr. Imp. & Power Dist., 78 Ariz. 30, 275 P.2d 393.

It appears to us that the majority, in holding that appellees are prohibited from using the word "Republican" when the statute does not so provide, are in effect legislating. It is fundamental that a court cannot legislate but must construe the law as written, Reichenberger v. Salt River, etc. District, 61 Ariz. 465, 150 P.2d 758; courts do not make law, since such function

is left to legislature, Collier v. O'Neil, 63 Ariz. 320, 162 P.2d 124; the Supreme Court has no right to legislate, State v. Phelps, 67 Ariz. 215, 193 P.2d 921; Morgan v. Board of Sup'rs, 67 Ariz. 133, 192 P.2d 236.

We subscribe to the doctrine that the statutes here involved should be liberally construed in favor of those of our citizens who desire to run for office. Sims Printing Co. v. Frohmiller, 47 Ariz. 561, 58 P.2d 518. The majority, we believe, have in this instance departed from this salutary rule.

These are our reasons for dissenting.