## Broughton v. Pursifull, County Clerk.

(Decided Sept. 30, 1932.)

E. C. O'REAR and MARTIN T. KELLY for plaintiff.

WALTER B. SMITH for defendant.

OPINION BY JUDGE THOMAS—Sustaining motion for mandatory injunction.

The husband of plaintiff (M. E. Broughton) was the sheriff of Bell county. He died, and plaintiff, his widow, was appointed to fill the vacancy until it could be filled by election of the people of the county at the regular election in 1932, and which was done in time to permit prospective candidates for the unexpired term to become candidates in the August primary, 1932. Plaintiff became a candidate in that primary election for the Republican nomination, but she was defeated by another. Later a sufficient number of petitioners asked that her name be caused to be printed on the official ballot as an independent candidate for the same office by the defendant, J. M. Pursifull, who was and is the county court clerk of Bell county, and she presented her petition to him with a request that he

accept it and file it. Furthermore, that in the preparation of the official ballot for the November, 1932, election he caused to be printed her name as an independent candidate to fill the vacancy of the office of sheriff under her picture as an emblem. He declined to accept the petition and refused to file it, and likewise declined to print her name upon the ballot as requested in her petition. She then filed this equity action in the Bell circuit court against defendant, setting up, in more detail, the facts as we have stated, and prayed that a mandatory injunction issue against defendant "directing and commanding him to cause and have printed on the official ballot to be used by the voters at the November election 1932 her name as an independent candidate under the device * * * as shown in the said petition," etc.

She moved for a temporary injunction and that it be made permanent upon a final hearing of the cause. The motion for a temporary injunction was overruled by the learned judge of the Bell circuit court, and this motion is made by plaintiff before the writer as a member of the Court of Appeals, pursuant to the provisions of section 297 of the Civil Code of Practice, for a review of the order of the court denying the injunction and directing that it issue in accordance with plaintiff's prayer.

We have not been favored with a brief by attorney for defendant, nor did the court state in its order overruling the motion for a temporary injunction the grounds therefor. However, defendant's answer admitted all the facts alleged in the petition, and then averred that his refusals complained of by plaintiff were because she was a defeated candidate in the 1932 primary election for the same office as a candidate of the Republican Party, and for which reason she was ineligible to run for that office either as the nominee of any party or as an independent candidate. The brief for plaintiff relies upon the principle announced by this court in the cases of Napier v. Roberts, 172 Ky. 227, 189 S. W. 206; Vaughan v. Roberts, 192 Ky. 364, 233 S. W. 733, and pertinent cases cited in those opinions. Those cases, and especially the Napier one, contain facts almost identical with those of this one. It was therein held that the law as it then existed did not bar a defeated candidate for a nomination in the primary from later becoming an independent candidate

for the same office against his successful opponent at the regular election by the requisite number of petitioners as prescribed by statute.

There was no question about the regularity and sufficiency of the required petition to have one's name printed as an independent candidate in either of the cited cases, nor is there any such in this case. On the contrary, it is admitted that the law was complied with in that respect. Unless, therefore, the principles announced in the Napier opinion, and which were not modified in the Vaughan one (but on the contrary were approved), have been retracted by this court in some later opinion, or unless they have been nullified by some valid enactment, or unless we are now convinced that they are unsound and will no longer be followed, the ruling of the trial judge was and is erroneous, and the pending motion for the temporary injunction should be sustained, and such writ directed to issue. They have not been modified by any subsequent opinion of this court, nor are we convinced that we should do so in this case. The opinion will not be incumbered by excerpts from such prior ones embodying our reasoning in arriving at the announced conclusions therein, but the reader is referred to them for such information. It is sufficient to say in this opinion that we are still satisfied with the soundness of the reasoning supporting our conclusions in those opinions, and we know no reason to depart therefrom. On the contrary, we still adhere to them as based upon the condition of our law as existing at the time they were rendered.

In the absence of the record containing the reason which induced the trial court to deny the motion for the temporary injunction, we are left to our own resources to discover it, and we can conceive of none, unless it be chapter 156, page 672, of the Session Acts of 1920, and which is now a part of section 1550-6 of the 1930 Edition of Carroll's Kentucky Statutes. That chapter re-enacted the prior section 1550-6 of our Statutes with the insertion of this as one of its amendments.

"No applicant or candidate for any public office in the State of Kentucky who shall have filed his application or declaration under said section and who shall have been defeated for the nomination for any office thereunder, shall be eligible or

permitted to run for the same office for which he was a candidate under said section at any general election in this state to be held during the same year in which his said application and declaration was so filed and in which he was a candidate in any primary election under said act.''

We therefore repeat that, unless the inserted 1920 amendment (if valid) had the effect to set aside and nullify the principles announced in the cases, supra, and to prescribe contrary thereto, then the opinion sought to be reviewed by this motion cannot be sustained. Our task, therefore, is to determine (1) the effect of the inserted portion of the 1920 amendment contained in chapter 156 of the 1920 acts, and (2) whether such determined effect is or is not valid.

It will be observed that the involved amendment does not undertake to say, nor does it in any manner enact, that a defeated candidate in the primary election held in the same year as the succeeding general election shall not be entitled to have his n a m e ''printed'' on the official ballot either as the nominee of any party, or as an independent candidate; but it says that such defeated candidate shall not ''be eligible or permitted to run for the same office for which he was a candidate'' at the following general election. There is a vast difference between and a wide gulf separating the two disqualifications; i. e., the right to have one's name *printed* on the ballot at public expense as a candidate for the same office for which he was defeated for the nomination in the primary, and the enacted disqualification in the amendment that such defeated candidate thereby became *ineligible* for the office and prohibited from *running* therefor. The latter disqualification as contained in the involved amendment was and is broad enough to prevent such defeated candidate from holding the office, notwithstanding a sufficient number of voters to elect him may have voted for him by writing his name on the blank line in the ballot. The amendment, therefore, as enacted, has the effect to and does annex this disqualification—that, if one seeks the nomination of a political party in a primary election, and is unsuccessful, he thereby becomes ineligible to hold the same office for which he was a candidate for the nomination for the term to be filled at the following regular November election. Not only is the candidate so situated thus deprived of running for

the office in the general election, but the voters of the political subdivision having the right to elect such officer are deprived of voting for such defeated candidate, although he may possess all constitutional qualifications and be otherwise supremely fitted for the office.

We will devote no time to a determination of the question, whether, if the involved amendment had gone no further than to prescribe that a defeated candidate in a primary could not require his name to be *printed* on the official ballot for the general election as a candidate for the same office, it would have been valid since that question is not involved. Some opinions of some courts in other jurisdictions have held that such a statute violated no provisions of the Constitutions of their states. But those opinions also point out that the Constitutions of those states contain provisions relating to primary nominating elections, and such provisions were construed by those courts to empower and authorize the Legislature to enact the particular statute involved; i. e., that a defeated candidate was not entitled to have his name "printed" on the official ballot to be voted at the following general election. We have no constitutional provision with reference to primary nominating elections, and to that extent such opinions might not apply to the question if it should arise in this commonwealth. But, as stated, we will not undertake to determine that question, since the involved 1920 amendment made no such provision. On the contrary, it went further and *wholly* disqualified the defeated candidate from holding the office or the voters from voting for him for such office. It in effect, if not in express terms, added an additional qualification for the office sought by the defeated candidate to the qualifications prescribed for such office by our Constitution.

Section 100 of our Constitution prescribes that no person shall be eligible to any of the offices mentioned in prior sections (97 and 99, one of which is sheriff) "who is not at the time of his election twenty-four years of age, * * * a citizen of Kentucky, and who has not resided in the state two years, and one year next preceding his election in the county and district in which he is a candidate." Other requirements pertaining to qualifications are prescribed for other officers, but the inserted portion of that section is the only one therein relating to the office of sheriff, which is the

office we have under consideration. Other sections of the Constitution (which are not necessary here to enumerate) prescribe disqualifications because of convictions for crime, and for corrupt practices in elections, etc., but we are not concerned with any of them in this case more than to say that a statute putting into force the disqualifications contained in those sections and prescribing machinery therefor is in a different category from the amendment we have under consideration, and the validity of all of which has been upheld by this and other courts, because not forbidden but expressly authorized by such constitutional provisions; some of which are, convictions for felonies, bribery, and corrupt practices in elections, none of which are here involved.

In the case of Jansky v. Baldwin, 120 Kan. 332, 243 P. 302, 303, 47 A. L. R. 476, the question was presented as to the authority of the Legislature to add disqualifications to hold office when the Constitution of the state prescribed specified disqualifications for the same office and the statutory enactment was in addition thereto. In holding that the Legislature could not enact such an additional disqualification, the court said:

"It is the rule that, when the Constitution of a state creates an office, and names the requirements of eligibility therefor, the Legislature has no authority to make additional requirements, nor to provide that one may hold the office who does not have the constitutional requirements. When an office is created by an act of the Legislature, that body has authority to name the terms of eligibility and modify them at will. State ex rel. Workman v. Goldthait, 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737; State ex rel. Bloomer v. Canavan, 155 Wis. 398, 145 N. W. 44; Dapper v. Smith, 138 Mich. 104, 101 N. W. 60; Wright v. Noell, 16 Kan. 601; Snow v. Hudson, 56 Kan. 378, 43 P. 260.

"Defendant calls attention to article 5, secs. 2, 5, and 6, of the Constitution, providing certain general disqualifications of electors and officeholders, and contends these are the only disqualifications which may be named for an office created by the Constitution, unless the Constitution itself be amended. This view is sustained in People ex rel. Hoyn v. McCormick, 261 Ill. 413, 103 N. E.

1053, Ann. Cas. 1915A, 338, while the opposite conclusion is reached in State ex rel. Atty. Gen. v. Covington, 29 Ohio St. 102; Darrow v. People, 8 Colo. 417, 8 P. 661; In re Opinion of Justices, 240 Mass. 611, 135 N. E. 305, citing with approval Hanson v. Grattan, 84 Kan. 843, 34 L. R. A. (N. S.) 240, 115 P. 646.''

The office involved in that case was county superintendent of public instruction. The Constitution of the state provided only that ''superintendent of public instruction shall be elected in each county, whose term of office shall be two years, and whose duties and compensation shall be prescribed by law.'' Const. Kan. art. 6, sec. 1. It neither prescribed qualifications or disqualifications, and, because of such failure, the statute under consideration was upheld, but in discussing the rule of constitutional interpretation the court employed the above excerpt from the opinion.

In State v. Moore, 87 Minn. 308, 92 N. W. 4, 6, 59 L. R. A. 447, 94 Am. St. Rep. 709, it was held that under the Constitution of that state the disqualifying statute under consideration therein denying the right of the defeated candidate to have his name ''printed'' on the official ballot for the general election did not violate any provision of the Constitution; but the court was careful to observe that the statute, though it prohibited the name of the defeated candidate in the primary from being *printed* on the official ballot for the general election, he was not ''deprived of the right to run for office, or the majority of voters deprived of his services in office, if they desire to secure them,'' by voting for and electing him, because, as the court observed, such voters could vote for the defeated candidate by writing his name in the blank line for that office and stamping opposite his name as written, as was provided for by a statute of that state, a duplicate of which we have in this commonwealth.

Referring to that case, the text in 9 R. C. L. 1055, sec. 71, makes note of the fact that the statute there involved did not deprive the defeated candidate of ''eligibility'' for the office, but only of the right to have his name printed on the official ballot for the general election, when it says: ''Moreover, the blank space provided on the official ballot where the voters may write the name of any qualified citizen if they wish to vote

for him protects his eligibility.'' In the annotation of the Jansky Case in 47 A. L. R. beginning on page 481, the annotator says: ''With but one exception, the courts have recognized the general rule when a state Constitution names the qualifications for a constitutional office, the legislature has no authority to prescribe additional qualifications, or to remove any of the requirements provided for in the Constitution, unless that instrument, expressly or by implication, gives the legislature such power.'' That excerpt is supported by opinions from the highest courts of a number of states in the Union, which may be ascertained by reference thereto by the reader.

The text in 22 R. C. L. 401, sec. 41, recognizes the distinction made by some courts with reference to qualifications to fill constitutional offices when in prescribing them the Constitution uses only negative language and where it employs positive language, i. e., where it prescribes that the particular officer shall possess the enumerated qualification, but does not say that all persons possessing those qualifications are eligible. The writer of that text approves the rule adopted by the great majority of courts, to the effect that, when the Constitution prescribes designated qualifications, it is a limitation upon the Legislature to prescribe additional ones. The language of the text upon that point is:

''While it has been ruled that even where the Constitution has prescribed certain qualifications the legislature may prescribe additional qualifications unless it appears that this action is prohibited, the *better opinion appears* to be that a regulation on the subject inserted in the Constitution operates as an implied restriction on the power of the legislature to impose additional qualifications.'' (Our emphasis.)

Cases in support of that text are People v. McCormick, 261 Ill. 413, 103 N. E. 1053, Ann. Cas. 1915A, 338, and State v. Craig, 132 Ind. 54, 31 N. E. 352, 16 L. R. A. 688, 32 Am. St. Rep. 237. The text in 46 Corpus Juris, in treating of the subject of ''Officers,'' on the question under consideration, says: ''Where the Constitution has clearly defined the qualifications of an officer, it is not within the power of the legislature to change them or add new or additional qualifications, unless the Constitution confers that power.''

This opinion could be extended by incorporating text authorities and judicial opinions to the same effect as those hereinbefore referred to, but, since all of them are in practical accord upon the precise question under consideration, we deem it unnecessary to further lengthen the opinion by doing so.

Much of the confusion and contradiction contained in the declared law is due to the failure of courts and members of the profession to differentiate between apparently analogous facts, overlooking the controlling one, but which latter calls for the application of an entirely different legal principle. Hence our reference to "the precise question" involved in this case, and which is—that where the Constitution prescribes who shall be qualified to fill an office created by it, by enumerating certain qualifications that he must possess, there is a clear implication that any one possessing such qualifications may fill the office, and it is then incompetent for the Legislature to prescribe additional disqualifications not recognized by the Constitution, notwithstanding it might be competent to regulate, by statute, nominating primary conventions or elections, to be followed by certain results, not including, however, ineligibility of a defeated candidate in such primary to run, or be voted for the same office at the following general election.

Such being the condition of the law, it results that the inserted 1920 amendment to section 1550-6, changing the right of such defeated candidate in the primary to run for or be voted for the same office at the following general election, is invalid because prescribing a ground of ineligibility for that particular office not recognized by the Constitution. That being true, the case must be governed by the statute as it existed before the involved amendment was enacted, and which, under the principles of the Napier opinion, supra, entitles plaintiff to the mandatory injunction she seeks, and the court erred in refusing to grant it.

Wherefore the motion made before the undersigned member of the Court of Appeals to direct the issuing of such temporary injunction is sustained, and the trial court will issue it as prayed for in the petition upon the execution of a bond by plaintiff as required by law in a sum to be fixed by the court, not to exceed $500.

The whole court, except Judge Willis, considered this motion with the writer, and concur in the conclusions reached.