RENDERED: APRIL 25, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0186-MR

KENTUCKY CONSTABLES
ASSOCIATION, INC.; BERL
MICHAEL SAYLOR, INDIVIDUALLY
AND AS PRESIDENT OF THE
KENTUCKY CONSTABLE
ASSOCIATION; DAVID PUCKETT,
INDIVIDUALLY AND AS
EXECUTIVE DIRECTOR OF THE
KENTUCKY CONSTABLE
ASSOCIATION AND AS CCCA
SECRETARY; LARRY WATKINS,
INDIVIDUALLY AND AS VICE
PRESIDENT OF THE KENTUCKY
CONSTABLE ASSOCIATION;
MICHAEL M. MARRACCINI,
INDIVIDUALLY AS CONSTABLE,
FRANKLIN COUNTY DISTRICT 1;
TRAVIS J. MCINTOSH,
INDIVIDUALLY AS CONSTABLE,
CLARK COUNTY, DISTRICT 2;
AND SHELBY LYNN TOLER, II,
INDIVIDUALLY AND AS
PROFESSIONAL
STANDARDS/GOVERNMENT
AFFAIRS DIRECTOR OF THE
KENTUCKY CONSTABLE
ASSOCIATION AND AS CCCA
PRESIDENT                                                          APPELLANTS

APPEAL FROM FRANKLIN CIRCUIT COURT

v.          HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 23-CI-00536

KENTUCKY DEPARTMENT OF
CORRECTIONS CRIMINAL JUSTICE
TRAINING (DOCJT); NICOLAI JILEK,
IN HIS OFFICIAL CAPACITY AS
DOCJT COMMISSIONER;
KENTUCKY STATE POLICE (KSP)
AND PHILLIP J. BURNETT, JR., IN
HIS OFFICIAL CAPACITY AS KSP
COMMISSIONER; KENTUCKY
JUSTICE AND PUBLIC SAFETY
CABINET, BY AND THROUGH
SECRETARY KERRY HARVEY, IN
HIS OFFICIAL CAPACITY;
KENTUCKY ASSOCIATION OF
COUNTIES (KACo); JIM
HENDERSON, IN HIS OFFICIAL
CAPACITY AS CEO AND
EXECUTIVE DIRECTOR, KACo;
SHERIFF CHRIS QUIRE, IN HIS
OFFICIAL CAPACITY AS SHERIFF,
FRANKLIN COUNTY; DANIEL
CAMERON, ATTORNEY GENERAL
AND IN HIS OFFICIAL CAPACITY
AND KLEC OFFICER; JIM GRAY, IN
HIS OFFICIAL CAPACITY AS
SECRETARY, KENTUCKY
TRANSPORTATION CABINET; JOHN
MOBERLY, MEMBER AND
EXECUTIVE DIRECTOR, IN HIS
OFFICIAL CAPACITY AS
EXECUTIVE DIRECTOR,
KENTUCKY LAW ENFORCEMENT
COUNCIL (KLEC), AND THE
MEMBERS OF THE KLEC IN THEIR

OFFICIAL CAPACITIES:  MICHAEL
"SPIKE" JONES, ARTHUR EALUM,
CHUCK DILLS, DEREK PAULSEN,
MICHAEL DELANEY, ERIC BLACK,
WILLIAM "CHIP" NOWLIN, CECIL
WATKINS, MIKE COYLE, JOHN P.
HUNT, SHAWN BUTLER, TODD
KELLEY, KEVIN METCALF,
NICOLAI JILEK, KYLE NALL, MIKE
BASSI, MIKE JANSEN, JOHNNY W.
BIVENS, NATHAN KENT, PAUL
HUMPHREY, ANTHONY "TONY"
LUCAS, GREG WOLF, BERL
PERDUE, JR., JILL STULZ, AND
TROY YOUNG                                                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND L. JONES,
JUDGES.

JONES, L., JUDGE:  Kentucky Constables Association, Inc. (KCA); Berl Michael

Saylor, Individually and as President of KCA; David Puckett, Individually and as

Executive Director of KCA and as Secretary of CCCA;[1] Larry Watkins,

Individually and as Vice President of the KCA; Michael M. Marraccini,

Individually, and as Constable, Franklin County, District 1; Travis J. McIntosh,

Individually, and as Constable, Clark County; and Shelby Lynn Toler, II,

---

[1] CCCA is not named as a party nor is the organization further described by Appellant.

-3-

Individually, and as Director of Professional Standards/Government Affairs of KCA and as President of CCCA (collectively referred to as Appellants) bring this appeal from a January 18, 2024 Order of the Franklin Circuit Court granting five Motions to Dismiss pursuant to Kentucky Rules of Civil Procedure (CR) 12.02. The first motion was filed by Kentucky Association of Counties (KACo);[2] Jim Henderson, in his Official Capacity as CEO and Executive Director, KACo; Sheriff Chris Quire, in his Official Capacity as Sheriff, Franklin County (collectively referred to as KACo Appellees). The second motion was filed by the Justice and Public Safety Cabinet, by and through its Secretary Kerry Harvey; Nicolai Jilek, in his Official Capacity as Commissioner of the Department of Criminal Justice Training (DOCJT); John Moberly, in his Official Capacity as Executive Director of the Kentucky Law Enforcement Council (KLEC) and the Members of KLEC[3] in their Official Capacities (collectively referred to as Justice Appellees). The third motion was filed by Daniel Cameron, Attorney General. The fourth motion was filed by Jim Gray, in his Official Capacity as Secretary,

---

[2] KACo is non-profit organization with voluntary membership open to all Kentucky counties and employs staff to provide "training, services, advice and other resources relating to a range of subject matter that are critical to the operation of the member counties." KACo Appellees' Brief at 4.

[3] Members of KLEC: Daniel Cameron, Michael "Spike" Jones, Arthur Ealum, Chuck Dills, Derek Paulsen, Michael Delaney, Eric Black, William "Chip" Nowlin, Cecil Watkins, Mike Coyle, John P. Hunt, Shawn Butler, Todd Kelley, Kevin Metcalf, Nicolai Jilek, Kyle Nall, Mike Bassi, Mike Jansen, Johnny W. Bivens, Nathan Kent, Paul Humphrey, Anthony "Tong" Lucas, Greg Wolf, Berl Perdue Jr., Jill Stulz, and Troy Young.

Kentucky Transportation Cabinet (KTC).  The fifth motion was filed by the Kentucky State Police (KSP) and Phillip J. Burnett, Jr., in his Official Capacity as KSP Commissioner.[4]  We affirm the circuit court's order granting the motions to dismiss for failure to state a claim upon which relief could be granted and dismissing the petition for declaration of rights in favor of Appellees.

## BACKGROUND

Constables are one of several elected county officers listed in Section 99 of the Kentucky Constitution.  KY. CONST. § 99.  Section 100 sets forth the basic constitutional *qualifications* a person must possess to hold the office of constable:  shall be at least twenty-four years of age; shall be a citizen of Kentucky; and shall have resided in the Commonwealth for two years and in the county and district for one-year preceding the election.  KY. CONST. § 100.  Section 101 specifically provides that "constables shall possess the same *qualifications* as Sheriffs, and their jurisdictions shall be coextensive with the counties in which they reside."  KY CONST. § 101 (emphasis added).  Nowhere in the Kentucky Constitution are the duties, responsibilities, or powers of a constable enumerated.  That task was left to the Kentucky General Assembly.

---

[4] KACo Appellees; Justice Appellees; Daniel Cameron, Attorney General; Jim Gray, in his Official Capacity as Secretary of KTC; KSP and Phillip J. Burnett, Jr. in his Official Capacity as KSP Commissioner will collectively be referred to as Appellees.

Historically, the General Assembly has included constables in the definition of peace officers and has specifically granted constables police powers, including, but not limited to, the power to investigate violations of the law, to perform searches and seize contraband, to stop persons and vehicles, and to make arrests. Following some concerning incidents involving Kentucky constables, the Kentucky Justice and Safety Cabinet directed the DOCJT to review the incidents and study the role of Kentucky's constables in law enforcement. Then, in 2022, the General Assembly enacted 2022 Kentucky House Bill No. 239 (HB 239), which introduced both new and amended legislation to improve the regulation of constables in the Commonwealth.[5]

Central to this appeal, HB 239 created Kentucky Revised Statutes (KRS) 70.325, which provides in relevant part:

> (1) Except as provided in subsection (2) of this section, for any constable or deputy constable taking office after January 1, 2023, who was not a constable or deputy constable in the preceding four (4) year term of office, the powers and duties of the office of constable shall not include the general powers of a peace officer or police officer. The powers and duties of the office of constable shall include:

---

[5] 2022 HB 239 created or amended the following statutes: KRS 15.340, KRS 15.404, KRS 15.707, KRS 16.060, KRS 61.300, KRS 61.310, KRS 63.170, KRS 63.180, KRS 64.060, KRS 64.190, KRS 64.200, KRS 70.310, KRS 70.320, KRS 70.325, KRS 70.350, KRS 70.410, KRS 70.430, KRS 70.440, KRS 148.056, KRS 150.100, KRS 164.955, KRS 183.881, KRS 189.950, KRS 230.240, KRS 277.280, KRS 281.765, and KRS 446.010.

(a) The specific powers and duties enumerated in this chapter;

(b) The power to distrain for his or her fees or for that of other officers as provided in KRS 64.400;

(c) The power to take necessary steps to stop, prevent, or bring under control any dog found chasing or molesting wild elk or deer at any time as provided in KRS 150.390;

(d) The power, in a county containing a city of the first class, to serve all forms of legal process in any child support action as provided in KRS 205.782;

(e) The power to sell property to satisfy a lien created by a taker-up of boats, rafts, platforms, or timber as provided in KRS 364.020;

(f) The power to serve a warrant to levy and seize upon the baggage and other personal property of a guest for unpaid services to the keeper of a hotel, inn, boarding house, or house of private entertainment as provided in KRS 376.350;

(g) The power to enforce a lien for the care of livestock as provided in KRS 376.410;

(h) The power to execute a warrant in actions regarding forcible entry or detainers as provided in KRS 383.210 and 383.245;

(i) The power to serve subpoenas issued by the Parole Board as provided in KRS 439.390; and

(j) The power to take up vagrants, kill mad dogs, kill and bury a distempered horse, ass, or mule,

kill and bury cattle, and alter a stud, jackass, or bull as provided in KRS 64.190.

(2) After January 1, 2023, no constable who is elected for the first time or a deputy constable appointed pursuant to KRS 70.320 shall be granted the powers generally applicable to peace officers and police officers unless the individual has been certified and maintains his or her certification pursuant to KRS 15.380.

This portion of HB 239, codified at KRS 70.325, essentially removed from newly elected constables the authority to exercise the general powers of peace officers and police officers absent the mandated certification which, pursuant to KRS 15.386, includes completion of a "basic training course." KRS 15.310 defines "basic training course" as a "course provided by" DOCJT or "approved and recognized" by KLEC. KRS 15.310(1). Appellants have referred to this "basic training course" as Peace Officer Professional Standards training or POPS. The powers retained by constables without certification were those enumerated in the new KRS 70.325 as well as the power to serve all forms of legal process, with the exception of warrants unless otherwise authorized by statute. *See* KRS 70.350(1).

On June 13, 2023, Appellants filed the underlying action, a Verified Petition for Declaration of Rights and Permanent Injunction. Appellants subsequently filed an Amended Complaint and Verified Petition for a Declaration of Rights and Permanent Injunction (Amended Complaint) on July 5, 2023, naming Appellees as Defendants. In the Amended Complaint, Appellants sought

-8-

both a declaration that the statutory amendments made by HB 239 were unconstitutional and a stay against the enforcement of the new law. Amended Complaint at 7. KCA claimed HB 239 was unlawful as it prevents constables taking office for the first time after January 1, 2023, from exercising the general powers of peace officers unless they achieve and maintain the required certification. More specifically, as summarized by the circuit court, Appellants asserted the following claims against Appellees:

> (1) HB 239 violates Section 101 of the Kentucky Constitution regarding the "qualifications" of constable by changing the qualifications of the office; (2) HB 239 treats constables differently from sheriffs in violation of equal protection; (3) HB 239 unconstitutionally limits who voters can elect to serve as constable; (4) the powers of constable, as amended by HB 239, conflict with the powers allowed to constables under other statutes; (5) HB 239 unconstitutionally renders the office of constable an 'empty shell[;]' (6) some constables elected in November 2022 and sworn in prior to January 1, 2023, are wrongly being subjected to the provisions of HB 239; (7) constables are being denied access to certain law enforcement computer system applications; (8) HB 239 impairs certain contracts that [Appellants] are parties to; and (9) HB 239 violates Sections 99, 101, and 235 of the Kentucky Constitution.

January 18, 2024, Order at 4.

Five motions to dismiss for failure to state a claim pursuant to CR 12.02 were subsequently filed by Appellees. Each Appellee joined in one of the five motions to dismiss. By order entered January 18, 2024, the circuit court

granted all five motions to dismiss and generally concluded that "HB 239 is not an attempt to alter the constitution by legislation, HB 239 does not violate Section 101 of the Kentucky Constitution, nor have [Appellants] pleaded a viable equal protection claim. Thus, the Court finds that [Appellants] have failed to state a claim." January 18, 2024, Order at 14. This appeal follows.

At the heart, the claims Appellants set forth in the Amended Complaint and carried forward through this appeal originate from the statutory changes contained in HB 239. Appellants argue that HB 239 unlawfully alters the Kentucky Constitution by stripping constables of police powers and changing qualifications for the office of constable so they no longer align with qualifications for sheriffs.

**ANALYSIS**

Ultimately, this case centers on constitutional standing. "[T]he existence of a plaintiff's standing is a constitutional requirement to prosecute any action in the courts of this Commonwealth . . . ." *Cabinet for Health & Fam. Servs., v. Sexton, ex rel. Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 188 (Ky. 2018). A justiciable cause is "a *constitutional predicate to maintaining a case in Kentucky['s] courts* . . . ." *Id*. at 192 (emphasis original). Whether Appellants had standing to bring suit against Appellees is a jurisdictional question of law that is reviewed *de novo. Ward v. Westerfield*, 653 S.W.3d 48, 51 (Ky. 2022) (citing

*Commonwealth v. B. H.*, 548 S.W. 3d 238, 242 (Ky. 2018)).  More to the point, "[s]ince a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo."  *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (citing *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009)).

It is well settled that courts in Kentucky "do not function to give advisory opinions, even on important public issues, unless there is an actual case in controversy."  *City of Pikeville v. Kentucky Concealed Carry Coalition, Inc.*, 671 S.W.3d 258, 263 (Ky. 2023) (quoting *Philpot v. Patton*, 837 S.W.2d 491, 493 (Ky. 1992)).  Furthermore, "all Kentucky Courts have the constitutional duty to ascertain the issue of constitutional standing, acting on their own motion, to ensure that only *justiciable causes* proceed in court, because the issue of constitutional standing is not waivable."  *Sexton*, 566 S.W.3d at 192 (emphasis original) (citations omitted).

Kentucky has adopted the federal test for determining whether a party has constitutional standing as set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  And the Kentucky Supreme Court recently reiterated the *Lujan* test by setting forth the requirements to pursue a claim in the courts of the Commonwealth:

[T]he initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) *injury*, (2) *causation*, and (3) *redressability*. In other words, [a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. [A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent . . . . The injury must be . . . distinct and palpable, and not abstract or conjectural or hypothetical. The injury must be fairly traceable to the challenged action, and relief from the injury must be likely to follow from a favorable decision.

*City of Pikeville*, 671 S.W.3d at 264 (emphasis added) (internal quotation marks and citations omitted). If a plaintiff fails to demonstrate constitutional standing, the case must be "dismissed for lack of subject-matter jurisdiction." *Id.* at 264 (citations omitted). The proof necessary for determining standing is dependent upon the stage of the legal proceeding; and at the pleading stage less specificity is required. *City of Pikeville*, 671 S.W.3d at 265 (citations omitted).

## A. INJURY

To establish an injury for purposes of constitutional standing, a "plaintiff must have suffered an injury in fact[.]" *Ward*, 653 S.W.3d at 51. An injury in fact is defined as "an invasion of a legally protected interest" which must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. at 51.

-12-

KCA claims the individual constables have suffered an injury by the General Assembly's removal of the police powers all constables exercised before HB 239 became law. The constables assert this injury is actual and concrete since, as of January 1, 2023, they have been prevented from assuming the constitutional duties of their elected office. We agree the individual constables have sufficiently demonstrated an injury for the purpose of establishing standing.

We must also determine whether KCA as an association has done so. In Kentucky, it has been recognized that "an association may establish standing to assert a claim on behalf of its members despite the lack of an injury to the association itself." *City of Pikeville*, 671 S.W.3d at 264. It has been specifically held that "an association may have standing to assert a claim on behalf of its members 'only if its members could have sued in their own right.'" *Id.* at 264 (citations omitted). The proof necessary to establish standing for an association depends upon the stage of the proceeding. *Id.* at 265. More specifically, "[a]t the pleading stage, less specificity is required. At that point, an association may speak generally of the injuries to 'some' of its members, for the 'presum[ption] [is] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 265 (quoting *Commonwealth ex rel. Brown v. Interactive Media Ent. and Gaming Ass'n Inc.*, 306 S.W.3d 32, 39-40 (Ky. 2010)).

As this case was at the pleading stage below, the general allegations are presumed to embrace the specific facts to support the claims. *See City of Pikeville*, 671 S.W.3d at 265. Therefore, as we have determined that individual constables belonging to the KCA have suffered an injury, we likewise believe KCA has the ability to assert injury on behalf of all constables.

Repeatedly throughout both the Amended Complaint and this appeal, Appellants also assert injuries suffered by Kentucky voters, Kentucky sheriffs, and Kentucky chiefs of police. There is a longstanding presumption against the recognition of standing based only on "generalized grievances" which are claims shared substantially in equal measure by all or by a large class of citizens. *Ward*, 653 S.W.3d at 52 (citations omitted). Furthermore, no Kentucky sheriff or Kentucky police chief joined the Amended Complaint. "To have standing, a litigant must seek relief for an injury that affects him [or her] in a personal and individual way." *Id.* (citations omitted). In addition, "[a] litigant raising a generally available grievance about government, no matter how sincere, and claiming only harm to his and every other citizen's interest in the proper application of the laws, does not state a justiciable case or controversy." *Id.* (internal quotation marks and citations omitted). Those seeking relief through Kentucky's courts must have suffered an actual "injury in fact" that is not "conjectural or hypothetical." *Id.* at 51 (citations omitted). Therefore, both the

individual constables and the KCA are unable to pursue any claims or contentions of error based on harm caused by HB 239 to Kentucky voters in general or to nameless Kentucky sheriffs and Kentucky chiefs of police as a class.

## B. CAUSATION

Having established injury, we now turn to causation, the second prong of justiciability. Appellants must show their injuries were caused by the actions taken by Appellees.

### 1. KACo Appellees

We will initially discuss causation as to KACo Appellees. In its January 18, 2024 Order, the circuit court pointed out the crux of Appellants' claim against KACo Appellees was a one-page memorandum KACo distributed to its member counties following the enactment of HB 239. KACo Appellees argue the memorandum did not contain directives or mandates, nor does KACo have the authority to issue directives or mandates to its member counties. KACo Appellees describe the memorandum as informing the member counties about the new law and providing recommendations on how to comply with the statutory changes made by HB 239. However, in their Amended Complaint Appellants allege KACo's memorandum harmed the contracts constables had with "counties, the public, vendors and others." Amended Complaint at 38. Appellants failed to identify any specific contract at issue, rather they merely mentioned what they

-15-

believed was harm to the interpretation of the general duties of constables "including conducting investigations for the county attorney, serving warrants and other legal documents for the court system and providing public safety for the voters who elected them." Amended Complaint at 38. Thus, Appellants are claiming injuries that are only "conjectural or hypothetical." *Id.* at 52. Therefore, Appellants failed to allege KACo caused them a "concrete and particularized" injury that "affect[ed] [Appellants] in a personal and individual way." *See id.* (citations and punctuation omitted).

## 2. Sheriff Chris Quire

We will separately discuss individual KACo Appellee Sheriff Quire. Appellants allege Sheriff Quire was following the advice of KACo when his office pursued charges against Constable Marraccini. However, Appellants failed to identify the charges against Marraccini and the circumstances which led to the charges, thereby failing to demonstrate the charges were based on either violations of HB 239 or the recommendations of KACo.

Constable Marraccini did not seek declaratory relief in his criminal case, but, instead, joined this collateral action to declare HB 239 unconstitutional while his criminal case was pending.

> [T]he [Declaratory Judgment Act] was not designed, and
> is not suitable, for the determination of the procedural
> rules, or the declaration of the substantive rights involved
> in a pending suit. Such decisions and declarations must

-16-

be made in the first instance by the court whose power is invoked and which is competent to decide them.

*Jefferson Cnty. ex rel. Coleman v. Chilton*, 33 S.W.2d 601, 603 (Ky. 1930). If Constable Marraccini was charged with violations of HB 239, the court presiding over his criminal charges was the proper forum for him to challenge the constitutionality of the statute. If Constable Marraccini was not charged with violations of HB 239, the fact that charges were brought against him by the office of Sheriff Quire is irrelevant to Appellants' constitutional challenge. Either way, Appellants have failed to establish even by allegation an actual injury caused by Sheriff Quire acting pursuant to the directives of either KACo or HB 239.

### 3. Attorney General

Attorney General Daniel Cameron is twice named in the Verified Complaint. First, pursuant to CR 24.03, KRS 418.075, and KRS 452.005, because the Attorney General is required to be served notice when the constitutionality of a law is challenged. And second, because he is a member of KLEC.

The Attorney General is "entitled to be heard" but not required to participate in a constitutional challenge. KRS 418.075(1). Appellants do not allege the Attorney General is prosecuting any action against any Kentucky constable based on HB 239. Nor does HB 239 grant the Attorney General any specific duties or powers relating to its enforcement. The Attorney General has not taken a position or requested to be heard on the constitutionality of HB 239, and

-17-

Appellants cannot demand he do so: "[Appellants] may not convert [an] academic question into a justiciable one by inserting the name of the Attorney General after 'v.' in the caption of his petition as a defendant therein without some averment bringing the case within the class of submissions contemplated and required by the statute." *Revis v. Daugherty*, 287 S.W. 28, 29 (Ky. 1926). Though properly served with notice, the Attorney General is not required to defend against Appellants' claims, nor can he be compelled to do so. *Commonwealth v. Hamilton*, 411 S.W.3d 751-52 (Ky. 2013). The circuit court dismissed Appellants' claims against the Attorney General because Appellants "failed to allege a single fact that would give rise to a claim. . . ." January 18, 2024 Order. We agree.

Furthermore, neither the Attorney General's membership on KLEC nor his designation of a representative to serve on KLEC in his stead require his individual participation in prosecuting or defending against Appellants' claims. Appellants brought claims against KLEC, KLEC's members, and the executive director of KLEC. The circuit court believed naming the Attorney General as a defendant based on his participation in KLEC was "duplicative" and "wholly unnecessary to obtain the requested relief against KLEC and its members." January 18, 2024 Order at 7. We agree. To the extent Appellants have a claim against KLEC or its members, the Attorney General is not required to act as counsel for

-18-

KLEC based merely on his membership in KLEC whether individually or through his designee.

### 4. **KSP and KSP Commissioner Phillip Burnett, Jr**.

Appellants claim the actions of KSP have prevented Kentucky constables from obtaining Originating Agency Identifier Numbers (ORI Numbers) which allow them access to a person's criminal history. Appellants do not dispute that ORI Numbers are issued by the Federal Bureau of Investigation (FBI). Indicating Appellants failed to establish a claim against Commissioner Burnett and KSP, the circuit court observed: "[KSP] and Commissioner Burnett do not control the FBI's decision." January 18, 2024 Order at 10. On appeal, Appellants failed to make any reference to KSP or Commissioner Burnett in their brief. Generally, failure to raise an issue on appeal results in its waiver. *Personnel Board v. Heck*, 725 S.W.2d 13, 18 (Ky. App. 1986) (citation omitted). However, in their Reply Brief, Appellants sought to correct their error, claiming KSP engaged in "misconduct" that "misled the FBI as to what a constable's duties are" which caused the FBI to make an "erroneous decision" in denying constables access to ORI Numbers. Appellants' Reply Brief at 7-8. Appellants provide little detail as to this alleged misconduct, stating only "KSP intentionally incorrectly notified the FBI that constables do not have law enforcement authority." Appellants' Reply Brief at 8. Presuming there was communication between KSP and the FBI, it is

-19-

unclear how this situation differs from that of the KACo memorandum. KSP cannot issue a directive to the FBI, and any communication from KSP to the FBI would be merely advisory and based on KSP's interpretation of HB 239 which contains no mention of ORI Numbers.

### 5. KTC Secretary Jim Gray

Appellants allege Secretary Gray caused them injury by directing local county clerks not to issue official license plates for constables. Appellants allege this puts Kentucky's constables in harms' way when they are engaged in the performance of law enforcement duties. Though finding Appellants failed to state a claim against Secretary Gray, the circuit court made no specific mention of the Secretary in its analysis. Similar to the situation with KSP and Commissioner Burnett, Appellants also failed to mention the Secretary in their brief, making no allegations of error regarding his dismissal. However, after Appellants' error was brought to light in the response brief filed by Secretary Gray, Appellants filed a Reply Brief which alleged that withholding official license plates from constables was a violation of equal protection, treating constables differently from other law enforcement officers.

### 6. Justice Appellees

The certification referenced in newly created KRS 70.325(2) is established and provided under the direction of Justice Appellees pursuant to KRS

15.310(1). The basic training program required to obtain certification predated HB 239 and was already required of all police officers and deputy sheriffs in the Commonwealth. This training is not open to any interested party. Candidates must be at least 21 years of age and meet certain education and fitness requirements as well as background checks. KRS 15.382. It is undisputed that any costs associated with a candidate's training are usually paid by the Kentucky law enforcement agency that has hired them. At various times in their Amended Complaint and appellate briefs, Appellants allege the training lasts 18-20 weeks and costs $15,000 to $30,000. Appellants concede many constables cannot meet the requirements to enter the basic training program. As constables do not have a sponsor agency to pay the cost of the training, Appellants also complain constables must be personally responsible for the cost. Furthermore, Appellants complain the duration of the training is a hardship for constables who often have other primary employment. Though HB 239 requires at least one spot in each training class be reserved for constables, Appellants argue this does not meet the need. However, Appellants failed to state that constables have been denied training who have met all the requirements under KRS 15.382, were willing to pay the associated costs, and willing to attend the full session of classes. As Justice Appellees are responsible for the certification mandated by HB 239, Appellants argue they have suffered injury at the hands of Justice Appellees who, as a result of HB 239, have

enforced the unlawfully altered constitutional qualifications for the office of constable and have violated equal protection guarantees by requiring training for constables that is not required of sheriffs before they can exercise police powers.

## C. REDRESSABILITY

Redressability, that "a favorable [court] decision is likely to redress the injury[,]" is the final factor required for a justiciable claim. *Sexton*, 566 S.W.3d at 192 (citations omitted). In the prayer for relief contained in their Amended Complaint, Appellants sought a declaration that HB 239 violates the Kentucky Constitution and asked for injunctive relief prohibiting its enforcement. Appellants assert the circuit court erred by not granting a declaratory judgment in Appellants' favor. Appellants' entire contention on this issue is as follows:

> Declaratory judgment is appropriate in this matter. The Appellees below argued that Appellants were seeking an 'advisory opinion' from this Court. AG Memo in Support, R. 339, p. 8. Nothing could be further from the truth. Constables across the Commonwealth are suffering current and past harm due to the unconstitutional law, and the injury is present and justiciable. Declaratory judgment would have prevented further injury, and was improperly denied by the circuit court in its Order dismissing, at p. 8.

Appellants' Brief at 8-9.

The declaratory judgment statute, KRS 418.040, provides as follows:

> In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an *actual controversy* exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

(Emphasis added.) The requirement that an "actual controversy" exists is of paramount importance to a determination pursuant to the declaratory judgment statute. The actual controversy requirement was addressed by the Kentucky Supreme Court in *Foley v. Commonwealth*, 306 S.W.3d 28 (Ky. 2010):

> The existence of an *actual controversy* respecting justiciable questions is a condition precedent to an action under the [Declaratory Judgment Act]. The court will not decide speculative rights or duties which may or may not arise in the future, but only rights and duties about which there is a present actual controversy presented by adversary parties, and in which a binding judgment concluding the controversy may be entered.

*Id.* at 31 (emphasis added) (citations omitted). Simply stated, a declaratory judgment action is utilized to "declare the rights of litigants in advance of [an] action when [we] conclude [ ] that a justiciable controversy is presented." *Jarvis v. National City*, 410 S.W.3d 148, 153 (Ky. 2013) (citations omitted). Furthermore, "litigants may not establish constitutional standing by simply seeking declaratory relief." *Ward*, 653 S.W.3d at 55.

## 1. KACo Appellees

Appellants contend HB 239 is an unconstitutional prohibition on the exercise of general police powers by newly elected constables. In addition, Appellants allege this prohibition has spilled over to affect longer serving constables though HB 239 claims constables already holding office were to be "grandfathered-in." However, KACo Appellees play no role in implementing or enforcing the certification requirement of HB 239 and do not have the ability to rescind the statutorily created certification requirement. As the changes instituted by HB 239 could affect the potential for civil liability for counties, KACo was merely advising its member counties on how to avoid such liability.

Appellants dispute the contents of the KACo memorandum either because they do not believe HB 239 is constitutional or they believe KACo misinterpreted the law. However, "[e]very dispute between lawyers on a subject of law . . . is not a justiciable controversy . . . . A mere difference of opinion is not an actual controversy . . . ." *Chilton*, 33 S.W.2d at 605 (internal quotation marks and citations omitted). "Courts will not take jurisdiction . . . unless the alleged controverted questions are justiciable ones, and which do not include abstract legal questions . . . ." *Commonwealth v. Crow*, 92 S.W.2d 330, 331 (Ky. 1936) (citations omitted). The circuit court stated "[a] difference in opinion concerning the contents of KACo's memorandum to its clients is not a real controversy" and

-24-

KACo Appellees were not "charged with enforcing or interpreting the legality of HB 239 . . . [thus] it cannot be said that [Appellants] have pleaded an actual case or controversy against [KACo Appellees]." January 18, 2024 Order at 8-9. We agree.

Furthermore, not only did Appellants allege only a vague and hypothetical injury to any existing or future contracts between constables and county governments caused by the KACo memorandum, but the relief sought by Appellants, a declaration of the unconstitutionality of HB 239, would fail to redress that injury. This is not the forum to address the alleged breach of any contracts between Appellants and the counties advised by KACo.

Therefore, even if Appellants established injury and causation, they failed to assert a redressable claim. Without redressability, Appellants do not have a justiciable claim against KACo Appellees. In the absence of justiciability, any opinion by this Court would be nothing more than an advisory opinion.

> If a case is not *justiciable*, specifically because the plaintiff does not have the requisite standing to sue, then the circuit court *cannot* hear the case. And because both [the Supreme Court] and the Court of Appeals "shall have *appellate jurisdiction only*," logically speaking, neither court can adjudicate a case on appeal that a circuit court cannot adjudicate because the exercise of appellate jurisdiction *necessarily assumes* that proper original jurisdiction has been established first at some point in the case.

*Sexton*, 566 S.W.3d at 196 (emphasis in the original) (internal quotation marks and citations omitted). Thus, the circuit court properly granted the motion to dismiss filed by KACo Appellees.

### 2. Sheriff Quire

As previously stated, Appellants brought their claims against Sheriff Quire in the wrong forum. Furthermore, by failing to allege Sheriff Quire or his deputies charged Constable Marraccini with any violation of HB 239, Appellants also have failed to show a declaration of the unconstitutionality of HB 239 would redress the alleged injury caused by the Sheriff. Therefore, on the basis of redressability, even if Appellants had proven injury and causation, the circuit court did not err in dismissing Sheriff Quire.

### 3. KSP and KSP Commissioner Burnett

For similar reasons, Appellants failed to establish a redressable claim against KSP and Commissioner Burnett. Appellants allege KSP Appellees "misled" the FBI, resulting in the FBI withholding ORI Numbers from constables. While arguably Appellants have established injury and causation against KSP Appellees, they failed to allege HB 239 was the basis of the supposed false statements or that their dispute with KSP and the Commissioner amounts to anything more than a nonjusticiable difference of opinion. Having failed to implicate HB 239, Appellants have failed to show a declaration of the

unconstitutionality of HB 239 would provide them with relief. Therefore, Appellants have failed once more to make a redressable claim, and the circuit court's dismissal of KSP and Commissioner Burnett was not in error.

### 4. KTC Secretary Jim Gray

Appellants' claim against the Secretary is not redressable by the relief Appellants seek. Appellants allege the Secretary caused county clerks to withhold "official plates" from constables. Nowhere does HB 239 deny any type of license plate to constables. This was a decision of the Transportation Cabinet. Declaring HB 239 unconstitutional would fail to remedy Appellants' alleged injury. Therefore, Appellants have failed to present a redressable and, therefore, a justiciable claim against Secretary Gray.

### 5. Justice Appellees

We will now address Appellants' assertions of error as to the Justice Appellees. Appellants claim Justice Appellees violated the Kentucky Constitution because the mandatory certification and related training provided by the Cabinet Appellees pursuant to HB 239 changed the constitutional *qualifications* of a constable. Appellants further allege the actions of Justice Appellees taken pursuant to HB 239 violated the equal protection guaranty by treating Kentucky constables and sheriffs differently. Finally, Appellants argue the changes wrought

by HB 239 unconstitutionally rendered the office of constable an "empty shell." We disagree on all counts.

### a. HB 239 is not an unconstitutional amendment of the qualifications for the office of constable

Sections 100 and 101 of the Kentucky Constitution discuss the qualifications needed to serve as a constable in the Commonwealth. Section 100 sets forth those *qualifications* as age, citizenship, and residency. KY CONST. § 100. Section 101 provides that the qualifications to hold the office of constable should be the same as those for the office of sheriff. KY CONST. § 101. Under HB 239, while certification is not mandatory to hold the office of constable, in order to exercise police powers, constables must receive this certification from Justice Appellees. Appellants argue certification is a new qualification for the office of constable, and, by association, obtaining certification creates additional financial, character, educational, and fitness qualifications not contained in the Constitution.

As early as 1856, the highest court of the Commonwealth indicated that constitutional qualifications referred only to those requirements that affect the ability of a candidate to seek a particular office. *See Hall v. Hostetter*, 56 Ky. 784 (1857). At the time, the Kentucky Constitution declared marshals and sheriffs were to have the same qualifications. *Id.* In preventing a two-term marshal from seeking a third term due to a provision in the Constitution preventing sheriffs from seeking a third term, the Court ruled:

> The plain import of the provision, that a marshal of a city court shall have the same qualifications as a sheriff, is that he shall be eligible to office under like circumstances and in the same condition of things, and that whatever has the effect, under the constitution, to incapacitate an individual for the office of sheriff will also incapacitate an individual for the office of marshal.

*Id*. at 786-87.

In 1932, M.E. Broughton hoped to succeed her deceased husband as sheriff of Bell County. *Broughton v. Pursifull*, 53 S.W.2d 200 (Ky. 1932). After losing to another candidate in the Republican primary, Broughton obtained the appropriate signatures and sought to have her name added to the ballot as an independent candidate. *Id*. The county clerk refused, presumably because a law passed in 1920 prohibited persons who had lost a primary for office from running for that same office in the general election. *Id*. at 201. The Court declared: "It is the rule that, when the Constitution of a state creates an office, and names the requirements of eligibility therefor, the Legislature has no authority to make additional requirements, nor to provide that one may hold the office who does not have the constitutional requirements." *Id*. at 202 (citations omitted). To further clarify, the Court held:

> [W]here the Constitution prescribes who shall be qualified to fill an office created by it, by enumerating certain qualifications that he must possess, there is a clear implication that any one possessing such qualifications may fill the office, and it is then incompetent for the

> Legislature to prescribe additional disqualifications not recognized by the Constitution.

*Id*. at 203. The *Broughton* Court indicated a different conclusion could have been reached had Broughton merely been forced to run as a write-in candidate, banned from the ballot, but not from the office. *Id*. at 202. Therefore, *Broughton* held that constitutional qualifications are those minimum requirements that affect a person's ability to seek and hold the desired office. *Id.* at 203.

Appellants conflate the qualifications to hold the office of constable with the ability to exercise police powers. These are not the same. HB 239 does not prohibit an individual without the required certification from seeking and holding the office of constable. Therefore, HB 239 was not an unlawful attempt by the General Assembly to amend the constitutional qualifications to hold the office of constable by statute.

Throughout their Amended Complaint and appellate briefs, Appellants repeatedly claim constables are granted police powers under the Kentucky Constitution and any attempt to strip constables of police powers violates the constitution. Appellants have failed to cite any section of the Constitution which contains this grant of authority, and this Court has located no such constitutional provision. While the Kentucky Constitution establishes the qualifications for the office of constable, the powers and duties of a constable are the prerogative of the General Assembly and are set forth by statute. *See*

*Commonwealth v. Bradley*, 516 S.W.2d 644, 645 (Ky. 1974) ("The office of constable is created by Section 99 of the Constitution and constables are made peace officers by [statute]."). It goes to reason, if the General Assembly can grant constables police powers, the General Assembly can take those powers away. Therefore, the removal of police powers from constables is not an unlawful amendment to the Kentucky Constitution.

While Appellants also complain about the limited number of training spots allotted to constables, HB 239 sets a floor, a minimum number of reserved spots for constables, rather than a ceiling. While Appellants complain they have been denied access, they have not alleged that a constable meeting all pre-certification requirements has been kept out of basic training for a reason other than the constable's own inability to furnish the cost of the training or unwillingness to attend the full duration of the training. If such has occurred, that complaint is not based on the constitutionality of HB 239 and is not properly before this Court.

### b. The legislative removal of constables' police powers does not constitute an equal protection violation

Next, we turn to Appellants' contention of error regarding equal protection violations. More particularly, Appellants assert that HB 239 creates a disparity between constables and sheriffs or other elected peace officers by requiring constables receive certification in order to exercise police powers.

The equal protection provisions are set forth in the Kentucky Constitution at Section 1, Section 2, and Section 3. These provisions provide "the legislature does not have arbitrary power and shall treat all persons equally." *Zuckerman v. Bevin*, 565 S.W.3d 580, 594 (Ky. 2019). "[U]nless a statutory classification is arbitrary . . . the courts have no right to interfere with the exercise of legislative discretion." *Id.* at 594-95 (citation omitted). The goal of the equal protection provisions is to prevent government decisionmakers from treating people differently who are otherwise alike in all relevant respects. *Id.* at 595. As most legislation makes some differentiation between different classes of people, "neither the federal nor state constitutions forbid such classification per se." *Id.* at 596 (citing *Romer v. Evans*, 517 U.S. 620, 631 (1996)). Therefore, "the level of judicial scrutiny applied to an equal protection challenge depends on the classification made in the statute and the interest affected by it." *Id.* (citation omitted).

Because HB 239 involves neither a fundamental right nor a suspect class there is no heightened scrutiny, and the circuit court stated "there is no question that [Appellants] are merely entitled to rational basis review." January 18, 2024 Order at 12. In such a review, the classification created by the legislature is presumed valid "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose[.]" *Steven Lee Enter. v.*

*Varney*, 36 S.W.3d 391, 395 (Ky. 2000) (citations omitted). Moreover, "[a] classification by the legislature should be affirmed unless it is positively shown that the classification is so arbitrary and capricious as to be hostile, oppressive and utterly devoid of rational basis." *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, 689 S.W.2d 14, 19 (Ky. 1985). The burden is on the challenger to prove no rational basis exists. *Varney*, 36 S.W.3d at 395. Compounding the difficulty of bringing such a challenge, "a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification." *Id*. (internal quotation marks omitted). Appellants have failed to meet their burden. Not only is it redundant and inefficient for county sheriffs and county constables to exercise the same powers while sharing the same jurisdiction, but, as stated by the circuit court, "[i]t cannot be said that it is irrational to prohibit newly elected constables, who have not undergone state-approved training, to exercise peace officer power." January 18, 2024 Order at 13.

While Appellants argue that KCA provides its own training to its members, constables are not required to attend this training. Furthermore, Appellants concede the KCA training pales before the rigorous training required for certification by HB 239 and admit that many constables cannot pass the pre-certification requirements in order to. Therefore, Appellants themselves provide a

-33-

rational basis for requiring proper certification of constables who wish to operate as law enforcement officers.

### c. HB 239 does not render the office of constable an "empty shell"

Appellants further argue that without police powers the office of constable has been rendered an "empty shell." This argument stems from the opinion of the Court in *Johnson v. Commonwealth, ex rel. Meredith*, a case where a law was passed restricting the power of the Attorney General:

> In conclusion, we are of [the] opinion that, while the Attorney General possesses all the power and authority appertaining to the office under common law and naturally and traditionally belonging to it, nevertheless the General Assembly may withdraw those powers and assign them to others. . . . This, however, is subject to the limitation that the office may not be stripped of all duties and rights so as to leave it an empty shell. . . .

165 S.W.2d 820, 829 (Ky. 1942).

HB 239 did not strip constables of all powers. The newly created KRS 70.325 reiterated multiple powers the General Assembly had previously granted to constables which constables will retain even without certification. In addition, constables without certification retain the power to serve all legal papers with the exception of warrants. Appellants argue that the power to shoot a mad dog, once of vital importance, is now meaningless. However, this is due to the passage of time and not the passage of legislation.

Appellants believe police powers should be inherent to the office of constable, pointing to constables having long exercised those powers. However, Appellants ignore that those powers were granted to Kentucky constables by the Kentucky General Assembly and not by title. Even in a strongly worded dissent from 1974 which extolled the lofty history of constables as being second in power only to the Kings of England and France, Justice Pleas Jones acknowledged plainly: "[A constable] is charged with duties assigned to him by local law or by statute." *Bradley*, 516 S.W.2d at 645 (Jones, J., dissenting).

It is important to remember, despite Appellants' arguments to the contrary, HB 239 does not remove police powers from constables; it creates a training requirement before a newly elected constable, gun in hand, can exercise those powers. This is not without precedent. In 1978, the General Assembly passed legislation which prevented persons elected to the constitutional office of coroner from performing post-mortem examinations, arguably the most important duty of their position, without undergoing specific training which was also arranged through the Justice and Public Safety Cabinet. *See* KRS 72.405. This continues to be the law.

HB 239 did not create an empty shell. Rather, it sought to protect the citizens of the Commonwealth by ensuring constables who wish to add to their duties and act as law enforcement officers are trained as law enforcement officers.

## CONCLUSION

To assert a justiciable claim, a plaintiff must establish an actual injury caused by the defendant which can be redressed by the court. *Sexton*, 566 S.W.3d at 193. Appellants' Amended Complaint presented a list of grievances against a number of agencies and individuals, but largely failed to show these agencies and individuals were responsible for the alleged harm and entirely failed to establish redressability.

Though the office of constable was created by the Kentucky Constitution, the Constitution is silent on the powers and duties of that office, thereby allowing the General Assembly to set forth those powers and duties by statute. Amending or creating legislation to alter those powers and duties or place limits upon the exercise of those powers and duties does not alter the qualifications for the office set forth by the Constitution. While sheriffs and constables share the same constitutional qualifications to hold office, there is a rational basis for the General Assembly to differentiate between the two, thereby eliminating confusion as to the role constables are to serve in the county and ensuring constables who wish to undertake law enforcement duties receive law enforcement training in order to protect the citizens of the Commonwealth. Nor has the office of constable been rendered an empty shell by the new legislation. Constables can still exercise many of their traditional functions, they can still assist the courts and others with

the service of papers, and they may still pursue the certification necessary to exercise police power.

In summary, Appellants have no right to exercise police powers bestowed on them by the Kentucky Constitution and have failed to present any justiciable claims against Appellees. Any arguments raised by the parties which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

For the foregoing reasons, the January 18, 2024 Order of the Franklin Circuit Court granting Appellees' motions for dismissal for failure of Appellants to state a claim upon which relief can be granted is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Anna Stewart Whites
Frankfort, Kentucky

BRIEF FOR APPELLEES
KENTUCKY ASSOCIATION OF
COUNTIES (KACo), JIM
HENDERSON, AND SHERIFF
CHRIS QUIRE:

Jeffrey C. Mando
Olivia F. Amlung
Covington, Kentucky

Tim Sturgill
Frankfort, Kentucky

BRIEF FOR APPELLEES
KENTUCKY STATE POLICE AND
COMMISSIONER PHILLIP J.
BURNETT, JR.:

Lauren Lewis
Frankfort, Kentucky

BRIEF FOR APPELLEE JIM GRAY,
IN HIS OFFICIAL CAPACITY AS
SECRETARY, KENTUCKY
TRANSPORTATION CABINET:

Stewart C. Burch
Frankfort, Kentucky

BRIEF FOR APPELLEE
ATTORNEY GENERAL:

Matthew F. Kuhn
Solicitor General
Elizabeth Hedges
Assistant Solicitor General
Frankfort, Kentucky

BRIEF FOR APPELLEES JUSTICE
AND PUBLIC SAFETY CABINET
AND ITS DEPARTMENT OF
CRIMINAL JUSTICE TRAINING:

Erritt Griggs
Elizabeth E. Bond
Lexington, Kentucky